[No. 36279-8-I. Division One. April 28, 1997.]

DENISE J. MAVROUDIS, *Individually and as Personal Representative, Respondent,* v. PITTSBURGH-CORNING CORPORATION, ET AL., *Defendants,* OWENS-CORNING FIBERGLAS CORPORATION, *Appellant.*

24

*Michael J. Bond, Ronald C. Gardner*, and *Gardner, Bond, Trabolsi;* and *Steven G. Wraith, Philip B. Grennan*, and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.*, for appellant.

*Mark Leemon, William J. Rutzick*, and *Schroeter, Goldmark & Bender, P.S.*, for respondent.

KENNEDY, J. — Owens-Corning Fiberglas Corporation (OCF) appeals the judgment in an asbestos-related product liability and negligence action that was entered following the jury's findings that OCF provided a product that was not reasonably safe in that adequate warnings of the dangerous aspects of the product were not given, that OCF negligently failed to warn of these dangers, and that OCF thereby proximately caused the plaintiff's decedent, Michael M. Mavroudis, Jr., to contract mesothelioma. OCF contends that the trial court misinstructed the jury by giving a "substantial factor" instruction in place of a "but-for" instruction with respect to proximate causation and by giving an instruction that the duty to warn attaches whenever a reasonable person using the product would want to be warned of the risk of harm, rather than an instruction that the duty to warn arises whenever a reasonably prudent manufacturer exercising ordinary care would warn. OCF also contends that the trial court erred by failing to apply the Washington product liability act, in that the diagnosis of mesothelioma was made after the effective date of the Act. Finally, OCF contends that the trial court erred by entertaining a post-trial reasonableness hearing, by analyzing the pretrial settlements as of the date of the hearing rather than as of the date of the settlements, and by finding that the settlements were reasonable in the absence of substantial evidence.

We conclude that the trial court properly gave a "substantial factor" instruction with respect to proximate cause. We also conclude that the trial court's misinstruction with respect to when the duty to warn arises was harmless error in light of the single verdict rendered with respect to both theories of liability. In accord with settled law, we also conclude that the trial court did not err by failing to apply the Washington product liability act, in that both the injury-producing event, exposure to asbestos,

and the tissue changes that eventually led to the diagnosis took place before the effective date of the Act. We also conclude that OCF was not prejudiced by the delay in holding the reasonableness hearing, and that the trial court properly focused upon the reasonableness of the settlements in light of information available to plaintiff at the time the settlements were made. We decline to address OCF's challenge to the sufficiency of the evidence presented at the reasonableness hearing, due to inadequate briefing.

Accordingly, we affirm the judgment entered in favor of the plaintiff and affirm the trial court's reasonableness determination.

## DISCUSSION

Michael M. Mavroudis, Jr., had a long and successful career in the United States Navy before retiring in 1993. Twice he worked on ship conversions, once in Philadelphia in the early 1950s and again at the Puget Sound Naval Shipyard in the late 1950s and early 1960s. The work at the Puget Sound Naval Shipyard involved the conversion of the *U.S.S. Wright.* That assignment lasted nearly four years, during which Mr. Mavroudis's duties included removing old materials from the ship and maintaining and distributing stocks of new materials for the ship. An asbestos-based product known as Kaylo and produced by OCF was one of only three types of insulation used on the *U.S.S. Wright* conversion project, according to a person who worked as an insulator on that project. This same witness testified that most of the insulation work done on the *Wright* was installing pipecovering. Mr. Mavroudis, too, recognized OCF as a major supplier to the *U.S.S. Wright* project, and testified that his time on the *Wright* project is when he had the most asbestos exposure. An industrial hygienist testified that Kaylo gave off very substantial amounts of asbestos when it was cut.

Within a few months after his retirement, Mr. Mavrou-

dis discovered that he had mesothelioma. He was 59 years old at that time. Mr. Mavroudis is now deceased. Denise J. Mavroudis, his personal representative, has been substituted as a party plaintiff.

Dr. Samuel Hammar, a pathologist specializing in asbestos-related disease, testified that the asbestos included in the Kaylo product and the asbestos contained in other asbestos-based products handled by Mr. Mavroudis can cause mesothelioma. He also testified that scientific information indicated that all of Mr. Mavroudis's exposure to asbestos at Puget Sound Naval Station from 1957 to 1963 probably played a role in causing the mesothelioma, and that he could not say which exposures were, in fact, the cause of the condition. He also testified that as little as 10 percent of Mr. Mavroudis's asbestos exposure would have been sufficient to cause mesothelioma.

Dr. Hammar testified that the cellular changes which led to Mr. Mavroudis's mesothelioma began before 1981.

Mr. Mavroudis and his wife brought this suit against OCF and others. The case was submitted to the jury with claims against OCF for (1) strict liability for selling a product not reasonably safe as designed, (2) strict liability for selling a product not reasonably safe in that adequate warnings were not given with respect to the dangers presented by the product, and (3) negligence in failing to warn of the danger of exposure to Kaylo. The jury rendered a verdict in favor of the Mavroudises on the warning and negligence theories, and against the Mavroudises on the not-reasonably-safe-as-designed theory. The jury entered a single damages award in a sum in excess of one million dollars.

## CAUSATION

The trial court gave one proximate cause instruction for

all theories of liability.[1] This instruction is commonly known as a "substantial factor" instruction. It relieved the plaintiff of proving that, but for the exposure to Kaylo, Mr. Mavroudis would not have contracted mesothelioma and instead allowed the plaintiff to establish causation by showing that the defendant's negligence or product was a substantial factor in bringing about the injury, even though the injury would have occurred without it:

> The term "proximate cause" means a cause which in direct sequence, unbroken by a new independent cause, produces the injury complained of.
>
> There may be one or more proximate causes of an injury.
>
> If you find that two or more causes have combined to bring about an injury and any one of them operating alone would have been sufficient to cause the injury, each cause is considered to be a proximate cause of the injury if it is a substantial factor in bringing it about, even though the result would have occurred without it. A substantial factor is an important or material factor and not one that is insignificant.
>
> If you find that the sole proximate cause of any injury to plaintiff was the act or omission of some other person(s) or entity(ies) not party to this lawsuit, then your verdict should be for the defendant as to that injury.[2]

OCF argues that the trial court erred by failing to require Mr. Mavroudis to prove that, without the exposure to Kaylo, he would not have contracted mesothelioma. OCF admits that in certain circumstances a substantial factor instruction is appropriate but argues that this is not such a case because Mr. Mavroudis failed to establish that he could not prove cause in fact. In addition, OCF argues that in cases in which the burden of proof is properly relaxed from but-for causation to the substantial factor standard, it follows as a matter of policy that li-

---

[1]Instruction 22, Clerk's Papers at 364.

[2]Instruction 22, Clerk's Papers at 364.

ability should not be joint and several but rather should be apportioned in accord with the amount of risk created by each exposure. We will examine each of these contentions in turn.

Although we are aware that substantial factor causation instructions are commonly given in asbestos-injury cases tried in Washington, no published Washington case cited by the parties or found by this court through independent research directly addresses the propriety of substantial factor instructions in asbestos-injury cases.[3]

 In a recent pesticide case, *Hue v. Farmboy Spray Co.*,[4] the Supreme Court held that the trial court correctly determined that the plaintiffs did not have to prove or apportion individual causal responsibility, and that it was enough that plaintiff show the defendant's pesticide was contained in a mixture of pesticides that was applied by crop-dusting airplanes and was, therefore, " 'part of a cloud that then was the proximate cause of damage.' "[5] Unlike Instruction 22 in the instant matter, *Hue* did not

___

[3]In *Lockwood v. AC & S, Inc.*, 109 Wn.2d 235, 744 P.2d 605 (1987) the trial court instructed the jury: "If you find two or more causes combine to produce a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about harm, each is charged with responsibility for the harm." The jury was further instructed that "[w]hen the concurring negligence and/or product liability of two or more defendants are each [a] proximate cause of an injury, each is liable regardless of the relative degree in which each contributes to the injury[.]" *Lockwood*, 109 Wn.2d at 246 n.6.

*Lockwood* was a challenge-to-the-sufficiency-of-the-evidence case and not an instructional-error case. However, the court's ruling that where the evidence showed exposure to the defendant's product and an expert testified that all exposure to asbestos has a cumulative effect in contributing to the contraction of asbestosis, the jury could reasonably find that exposure to the defendant's product was a proximate cause, *Lockwood*, 109 Wn.2d at 247, is consistent with the giving of the substantial factor instruction.

[4]*Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 896 P.2d 682 (1995).

[5]*Hue*, 127 Wn.2d at 91 (quoting from the trial court's oral ruling, *see* 127 Wn.2d at 76 & n.12) (citing *Martin v. Abbott Lab.*, 102 Wn.2d 581, 689 P.2d 368 (1984) (eliminating individual causal responsibility in DES (diethylstilbestrol) cases); *Lockwood v. AC & S., Inc.*, 109 Wn.2d at 245 (plaintiff need only establish that defendant's asbestos products were among those in the plaintiff's work environment); *City of Benton City v. Adrian*, 50 Wn. App. 330, 342, 748 P.2d 679 (1988) (holding that where plaintiff suffers indivisible damage caused by the combined flow of defendants' excess irrigation waters, it was error to dismiss action on ground that damages are not sufficiently individualized and traceable to each

require a showing that an individual defendant's contribution to the pesticide cloud would have been sufficient to cause the injury. Professor Keeton recommends this rule. In Keeton's words:

> When the conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a but-for cause of the event, and application of the but-for rule to them individually would absolve all of them, the conduct of each is a cause in fact of the event.[6]

In *Hue*, the plaintiff only needed to show that a portion of a defendant's pesticide became part of the total cloud of pesticide that caused the damage. Instruction 22 in the present case required that the jury find that the quantity of OCF's asbestos to which Mr. Mavroudis was exposed would have been a sufficient cause of the mesothelioma, standing alone, even if the injury would have occurred without exposure to that specific product. *Hue* arguably sets an easier standard for asbestos-injury plaintiffs to meet than instruction 22 because under the *Hue* approach, any contribution to the exposure, no matter how insignificant in relation to the overall exposure, apparently could be the basis for liability. By citing *Lockwood* in conjunction with *Martin v. Abbott Lab.,*[7] the case eliminating the need to show individual causal responsibility in DES cases, the *Hue* court certainly implied that asbestos-injury plaintiffs need not prove or apportion individual causal responsibility but need only show that the defendant's asbestos products were among those in the plaintiff's work environment when the injurious exposure occurred.

While the substantial factor test may be unclear with regard to an *insubstantial* cause that combines with other causes to produce an injury, we need not reach that issue

---

defendant and defendants have burden of proving their individual contributions); *Phennah v. Whalen,* 28 Wn. App. 19, 26-27, 621 P.2d 1304 (1980), *review denied,* 95 Wn.2d 1026 (1981)).

[6]W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 268 (5th ed. 1984).

[7]*Hue,* 127 Wn.2d at 91 & n.22.

in this case. If the substantial factor instruction in this case went further than the Supreme Court would require in an asbestos-injury case under the reasoning in *Hue*, the "error" was not prejudicial to OCF because it *heightened* Mr. Mavroudis's burden by requiring him to show that exposure to OCF's product, Kaylo, standing alone, would have been sufficient to cause Mr. Mavroudis's injury. Mr. Mavroudis met that standard in this trial by showing that Kaylo was one of only three asbestos-containing products used during the time that he was assigned to the *U.S.S. Wright* project, that Kaylo gave off very substantial amounts of asbestos when cut, and that as little as 10 percent of the asbestos exposure Mr. Mavroudis received would have been sufficient to cause his mesothelioma. Thus, regardless of the possible effect of *Hue* with respect to causation instructions in future asbestos-injury trials, it is enough to say, here, that the trial court did not err in giving Instruction 22, in that substantial evidence provided a basis for a rational jury to find that exposure to Kaylo, standing alone, would have been sufficient to cause Mr. Mavroudis to contract mesothelioma, even though he might have contracted the cancer from his exposure to the other asbestos-containing products used on the *Wright* project, instead of from Kaylo.

In *Daugert v. Pappas*,[8] the Supreme Court observed that a change from the but-for to the substantial factor test for causation is normally justified only when a plaintiff is unable to show that one event alone was a cause of the injury:

> As noted by Dean Prosser, the substantial factor test aids in the disposition of three types of cases. First, the test is used where either one of two causes would have produced the identical harm, thus making it impossible for plaintiff to prove the "but for" test. In such cases, it is quite clear that each cause has played so important a part in producing the result that responsibility should be imposed on it. Second, the test is used where a similar, but not identical, result would

[8]104 Wn.2d 254, 262, 704 P.2d 600 (1985).

have followed without the defendant's act. Third, the test is used where one defendant has made a clearly proven but quite insignificant contribution to the result, as where he throws a lighted match into a forest fire. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 41 (5th ed. 1984).

OCF argues that this is not an appropriate case for application of the substantial factor test because Mr. Mavroudis failed to show that he could not prove that one event alone was the cause of the injury. We disagree with that view of the evidence in the record. Dr. Hammar testified that although all of Mr. Mavroudis's exposures to asbestos while working at the Puget Sound Naval Station from 1957 to 1963 probably played a role in causing the mesothelioma, and that as little as 10 percent of the total exposure would have been sufficient to cause the injury, he could not say which exposures were, in fact, the cause of the mesothelioma. This is exactly the kind of situation that calls for application of the substantial factor test, in order that no supplier enjoy a causation defense solely on the ground that the plaintiff probably would have suffered the same disease from inhaling fibers originating from the products of other suppliers.[9] In sum, we conclude that multi-supplier asbestos-injury cases call for the substantial-factor test of causation rather than the but-for test, in cases such as this one, wherein the expert witness testifies, as did Dr. Hammar, that all of the plaintiff's exposure probably played a role in causing the injury and that it is not possible to determine which exposures were, in fact, the cause of the condition. Whether the form of the instruction should be similar to the one used in this case, or similar to the one seemingly approved by the *Hue*

---

[9]*See, e.g., Eagle-Picher v. Balbos*, 604 A.2d 445, 459 (Md. 1992). Other cases around the country approve the use of the substantial factor test in asbestos-injury cases, including but not limited to *O'Connor v. Raymark Indus., Inc.*, 401 Mass. 586, 518 N.E.2d 510 (1988); *Thacker v. UNR Indus., Inc.*, 151 Ill. 2d 343, 603 N.E.2d 449, 455 (1992). A number of cases also deal with claims of instructional error similar to that raised by OCF in this case. *See, e.g., Murphree v. Raybestos-Manhattan, Inc.*, 696 F.2d 459, 463 (6th Cir. 1982); *In re Manguno*, 961 F.2d 533, 535 (5th Cir. 1992).

court is an issue that we need not reach, in that Instruction 22, even if more stringent in its requirement on plaintiffs than *Hue* would seem to require, falls well within the parameters of substantial factor causation theory.

 OCF requests that we add a market share proportionality rule in cases where the substantial factor test is properly used, similar to that developed in the DES cases. To the extent that the *Hue* analysis may actually be applied to asbestos-injury cases in the future, OCF's argument is persuasive. However, the *Hue* standard was not applied in the instant matter. Moreover, the Legislature has specifically exempted causes of action relating to "hazardous wastes or substances" from the general restriction of joint and several liability contained in the 1986 tort reform act.[10] The Supreme Court has held that this exemption includes cases relating to asbestos-caused injuries.[11] OCF's argument is better addressed to the Legislature than to the courts.

 In its reply brief, OCF argues for the first time that the instruction was erroneous because it did not require the jury to find that OCF asbestos fibers were "actively operating" such that they would be an actual cause rather than a potential cause. An issue raised for the first time in a reply brief will not be considered by the appellate courts.[12]

## WASHINGTON PRODUCT LIABILITY ACT

 OCF next claims that the trial court erred by not applying the Washington product liability act (WPLA) in that Mr. Mavroudis did not discover his injury until 1993, well after the effective date of the Act. The WPLA applies only

[10]RCW 4.22.070(3)(a).

[11]*Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 667-69, 771 P.2d 711, 780 P.2d 260 (1989).

[12]*Yakima County (W. Valley) Fire Protection Dist. 12 v. City of Yakima*, 122 Wn.2d 371, 397, 858 P.2d 245 (1993).

to "claims arising on or after July 26, 1981."[13] In several prior cases we have held that a cause of action "arose" when the plaintiff was exposed to asbestos, not when he discovered his injury.[14] The issue is now settled as a matter of law, and we decline to re-examine it. Here, the record reflects that both the exposure and the tissue changes leading to the disease occurred well before the effective date of the Act.

## DUTY-TO-WARN INSTRUCTION

OCF assigns error to jury instruction 16, and to the trial court's failure to give proposed instructions 48 and 49. All three instructions relate to the negligence claim only. Instruction 16, OCF argues, misstated the law and is confusing and misleading. Instruction 16 was as follows:

> A manufacturer of products is under a duty to use ordinary care to test, analyze and inspect the products it sells, and is charged with knowing what such tests should have revealed.

> A manufacturer has a duty to use ordinary care to keep abreast of scientific knowledge, discoveries, advances and research in the field, and is presumed to know what is imparted thereby.

> When a product manufacturer becomes aware or should have become aware of dangerous aspects of its product, it has a continuing duty to warn of such dangerous aspects, even though the dangerous aspects are discovered after the product has left its hands. In such a case, the manufacturer is under a duty to act with regard to issuing warnings or instructions concerning the danger in a manner that a reasonably prudent manufacturer would act in the same or similar circumstances. This duty is satisfied if the manufacturer exercises reasonable care to inform product users.

---

[13]RCW 4.22.920.

[14]*Koker v. Armstrong Cork, Inc.*, 60 Wn. App. 466, 471-72, 804 P.2d 659, *review denied*, 117 Wn.2d 1006 (1991); *Krivanek v. Fibreboard Corp.*, 72 Wn. App. 632, 865 P.2d 527 (1993), *review denied*, 124 Wn.2d 1005 (1994); *Viereck v. Fibreboard Corp.*, 81 Wn. App. 579, 915 P.2d 581, *review denied*, 130 Wn.2d 1009 (1996).

This duty to warn attaches, not when scientific certainty of harm is established, but whenever a reasonable person using the product would want to be informed of the risk of harm in order to decide whether to expose himself to it.[15]

■ At trial OCF objected on the grounds that a reasonably prudent manufacturer standard was more appropriate.[16] In *Stewart v. State*,[17] the Supreme Court held that an objection must apprise the judge of the "precise points of law involved." The *Stewart* court found the objection inadequate where the objecting party cited "neither theory nor authority."[18] Here, although OCF cited theory, it failed to cite authority. Nevertheless, we hold that the objection was sufficient to preserve the issue for review.

Defendant's proposed instructions numbers 48 and 49 both differ from instruction 16 with respect to the final paragraph. Proposed instructions 48 and 49 each substituted a new paragraph for the final paragraph of instruction 16. The new paragraph changed the reasonable user theory of instruction 16 to a reasonable manufacturer theory: "This duty to warn attaches, not when scientific certainty of harm is established, but whenever a reasonably prudent manufacturer exercising ordinary care would warn."[19]

■ Our Supreme Court has described negligence analysis as a "seller-oriented" standard, and strict liability as a "buyer-oriented" standard.[20] Under the negligence test, the duty to warn does not attach until the risk becomes

---

[15]Clerk's Papers at 359.

[16]Clerk's Papers at 228, 233.

[17]*Stewart v. State*, 92 Wn.2d 285, 298, 597 P.2d 101 (1979).

[18]*Stewart*, 92 Wn.2d at 298.

[19]Clerk's Papers at 241.

[20]*Estate of Ryder v. Kelly-Springfield Tire Co.*, 91 Wn.2d 111, 118, 587 P.2d 160, 16 A.L.R.4th 129 (1978).

apparent to the manufacturer.[21] The final paragraph of Instruction 16 shifted the focus from what a reasonable manufacturer would do to what a reasonable consumer would want, without reference to whether the manufacturer is aware of the risk. We hold that the trial court erred with respect to the last paragraph of Instruction 16.

The trial court apparently relied on this court's opinion in *Koker* as authority for the final paragraph of the instruction. In *Koker* the trial court gave and this court quoted an instruction similar to that in this case, and including a final paragraph identical to that in instruction 16 of this case. The trial court's and the Mavroudises' reliance on *Koker* is misplaced because the appellant in *Koker* did not put that language at issue on appeal and this court did not consider the propriety of that language.[22] The Supreme Court has rejected use of the *Koker* instruction in a negligence case.[23]

We reverse only where an error is prejudicial, however.[24] Here, the error was harmless because the jury rendered a single monetary verdict on both the strict liability product-warning claim and the negligent failure-to-warn claim. Because we affirm the judgment with respect to the strict liability product-warning claim, a reversal of the negligent failure-to-warn claim would not affect the judgment.[25]

## REASONABLENESS HEARING

RCW 4.22.060(1) provides in part that "A party prior to

---

[21]*Lockwood v. AC & S, Inc.*, 44 Wn. App. 330, 345, 722 P.2d 826 (1986), *aff'd*, 109 Wn.2d 235, 744 P.2d 605 (1987).

[22]*Koker*, 60 Wn. App. at 478.

[23]*Young v. Key Pharm., Inc.*, 130 Wn.2d 160, 178, 922 P.2d 59 (1996).

[24]*Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 36, 864 P.2d 921 (1993).

[25]We also believe that in some factual situations the final paragraph could be misleading and therefore prejudicial. *See Smith v. City of Aberdeen*, 7 Wn. App. 664, 668, 502 P.2d 1034 (1972).

entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court." Before trial, over a period of months between June 20, 1994, and January 4, 1995, eight defendants settled with the Mavroudises for a total of $38,500. Only one of the settling defendants gave notice of intent to settle; that notice was given two days after the trial started. No settling party requested a reasonableness hearing until after trial, when the Mavroudises requested one. A reasonableness hearing was held on February 24, 1995, the same date as the judgment presentation hearing. The trial court found the pretrial settlements reasonable and entered an order to that effect on the same day it entered judgment.

In a recent Supreme Court case, *Brewer v. Fibreboard Corp.*, a majority of the justices agreed that timely notice of the intent to settle is important to the nonsettling party.[26] In *Brewer*, the plaintiff settled with the Manville Trust, a non-party, on November 7, 1991, for $175,000.[27] The jury returned a $372,300 verdict on July 7, 1992, against certain defendants.[28] After trial, on September 4, 1992, the plaintiff gave notice to all parties of intent to settle with certain other defendants.[29] The trial court found all settlements reasonable and judgment was entered on May 7, 1993.[30]

Relying upon *Brewer*, OCF argues that Mr. Mavroudis's failure to follow the statutory procedural requirements relating to reasonableness hearings prejudiced OCF because the trial court improperly relied upon evidence produced at trial in determining reasonableness of the pretrial

---

[26]*Brewer v. Fibreboard Corp.*, 127 Wn.2d 512, 528, 901 P.2d 297 (1995) (plurality opinion); *Brewer*, 127 Wn.2d at 539 (dissenting opinion).

[27]*Brewer*, 127 Wn.2d at 517-18.

[28]*Brewer*, 127 Wn.2d at 519.

[29]*Brewer*, 127 Wn.2d at 519.

[30]*Brewer*, 127 Wn.2d at 520, 528.

settlements. The plurality in *Brewer* reasoned that despite the failure of notice with regard to the Manville Trust settlement, due process requirements were satisfied when, on August 21, 1992, the nonsettling defendants moved for a reasonableness hearing with regard to the Manville Trust settlement, a hearing was held, and the trial court found the settlement reasonable.[31] The dissenting justices reasoned that the delayed notice and hearing was not per se prejudicial, but that it was prejudicial in that case because the trial court considered post-settlement information when determining reasonableness.[32]

Thus the plurality and the dissenters (a total of seven justices) agreed that the provision of post-settlement notice of intent to settle does not render invalid a finding of reasonableness where eventually such notice is provided and a hearing is held before entry of final judgment. Because untimely notice and hearing does not create prejudice per se, we must look to other sources of prejudice. Unlike the dissenting justices in *Brewer*, we are satisfied, here, based on the trial court's repeated references to the requirement that the reasonableness of the settlements must be considered in light of the posture of the case at the time the settlements were reached, that the trial court did not inappropriately consider post-settlement information when determining reasonableness.[33]

OCF also argues that Mr. Mavroudis's failure to follow the statutory procedural requirements relating to reasonableness hearings prejudiced OCF, in that it may have proceeded differently with regard to settlement if it had known about the other settlements. But OCF does not elaborate on how or why it might have acted differently. Neither does OCF point to any evidence in the record to support its claim that it might have acted differently if it

---

[31]*Brewer*, 127 Wn.2d at 529.

[32]*Brewer*, 127 Wn.2d at 539-40.

[33]We note that OCF improperly encouraged the court to find the settlements unreasonably small based on the size of the ultimate verdict against OCF.

had received timely notice of the settlements. Accordingly, we are unable to review this claim of prejudice.

■ OCF argues that even if the hearing were not fatally flawed by procedural violations, the trial court's determination of reasonableness is not supported by substantial evidence. Assuming that a reasonableness determination is a finding of fact reviewable for substantial evidence,[34] we decline to examine the sufficiency of the evidence in this case. We cannot ascertain from the briefing the nature of the evidence or the supposed inadequacies therein, with the single exception of one general objection based on hearsay contained in the declarations of counsel provided for use at the reasonableness hearing. Even that objection is not supported by authority stating that the court may not properly consider hearsay evidence that was relied upon by counsel in reaching the decision to recommend that the client settle a claim against a given party. An appellant who wishes to challenge the sufficiency of the evidence needs to outline the evidence in its brief, point to the deficiencies it contends exist, and cite to relevant authority. A bare conclusory allegation that the evidence is insufficient will not suffice, in that the appellate courts are not in the business of searching the record in an effort to determine the nature of any alleged deficiencies to which the challenger may be referring, and

---

[34]The parties urge no other standard. We have held that a trial court's reasonableness determination is a finding of fact that will not be disturbed if supported by substantial evidence. *Pickett v. Stevens-Nelsen, Inc.*, 43 Wn. App. 326, 332, 717 P.2d 277 (1986); *accord Brewer*, 127 Wn.2d at 524 (plurality opinion). Both *Pickett* and *Brewer* rely on *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 718, 658 P.2d 1230 (1983). But *Glover* says only that reasonableness involves factual determinations, and that factual determinations will not be disturbed if supported by substantial evidence. *Glover* does not say that the ultimate determination of reasonableness is itself a factual determination. A determination of reasonableness involves two steps: first, determining the historical facts giving rise to the settlement, and, second, deciding whether these historical facts make the settlement reasonable considering the relevant factors outlined in *Glover*. The second inquiry may be a mixed question of law and fact and should perhaps be reviewed de novo. *Cf. Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 1662-63, 134 L. Ed. 2d 911 (1996). We need not resolve that question in this case, in that we decline to review the challenge to the sufficiency of the evidence.

then to search the law for authority to support those same alleged deficiencies.

In conclusion, the only instructional error the trial court made in the course of the trial did not prejudice OCF. The Washington product liability act was not applicable to this claim. OCF has failed to demonstrate prejudice arising from the delay in holding the reasonableness hearing. Accordingly, we affirm both the judgment and the trial court's reasonableness determination.

BAKER, C.J., and AGID, J., concur.

Reconsideration denied June 10, 1997.