# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LARRY L. ROEMMICH and GLORIA ROEMMICH, husband and wife, | No. 82132-6-I |
| Appellants/Cross-Respondents, | DIVISION ONE |
| v. | |
| 3M COMPANY, | PUBLISHED OPINION |
| Respondent/Cross-Appellant, | |
| AIR & LIQUID SYSTEMS CORPORATION, as Successor by Merger to BUFFALO PUMPS, INC.; FRASER'S BOILER SERVICE, INC.; GENERAL ELECTRIC COMPANY; IMO INDUSTRIES, INC., individually and as successor-in-interest to DE LAVAL TURBINE, INC.; INGERSOLL-RAND COMPANY; ITT LLC, as successor-in-interest to FOSTER VALVES; METROPOLITAN LIFE INSURANCE COMPANY; MINE SAFETY APPLIANCES COMPANY, LLC; NORTH COAST ELECTRIC COMPANY; PFIZER, INC.; P-G INDUSTRIES, INC., as successor-in-interest to PRYOR GIGGEY CO., INC.; UNION CARBIDE CORPORATION; VIACOMCBS, INC.; and WARREN PUMPS, LLC, Individually and as successor in interest to QUIMBY PUMP COMPANY, | |
| Defendants. | |

SMITH, A.C.J. — Larry Roemmich wore 3M Company's 8710 mask from 1972 to around 1980 while working as an insulator at Puget Sound Naval Shipyard (PSNS), where he was exposed to asbestos and asbestos-containing products. In 2019, after being diagnosed with mesothelioma from asbestos exposure, Roemmich and his wife Gloria Roemmich filed a strict products liability claim and negligence claim against 3M, alleging that the 8710 mask was not adequately designed and that 3M failed to provide adequate warnings. After a jury trial, the jury returned verdicts in favor of 3M. The jury found that 3M was negligent in the manufacture and sale of the 8710 mask, but that such negligence was not a proximate cause of Roemmich's disease. The jury also denied the Roemmiches' strict liability claim, determining that 3M's 8710 respirator was reasonably safe in design and contained adequate warnings and instructions.

The Roemmiches appeal, asserting that the court failed to give an adequate proximate cause instruction and incorrectly gave a superseding cause instruction. They also claim that the court abused its discretion by excluding testimony from two of their experts. We conclude that the court did not abuse its discretion by excluding the expert testimony. However, the proximate cause jury instruction misstated the law and the superseding cause instruction was not supported by substantial evidence, and these erroneous instructions prejudiced the outcome of the trial on the issue of negligence. Therefore, we affirm in part, reverse in part, and remand for a new trial on the issue of negligence.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 82132-6-I/3

## FACTS

In 1970, 3M obtained approval from the U.S. Bureau of Mines[1] for the single-use 8710 mask that protected against pneumoconiosis and fibrosis producing dusts, which include asbestos fibers. 3M directed its marketing for the 8710 mask at asbestos workers in the insulation trade. In 1973, 3M advertised the mask with the tagline "You don't have to work yourself to death," and claimed that the 8710 masks were protective against "Stonecutter's disease[,] Asbestosis[, and] Grinder's rot." Asbestos causes two types of harm to individuals, non-cancerous diseases including pleural plaques and asbestosis, and cancerous malignant harms including lung cancer and mesothelioma.[2] A dose of asbestos is sufficient to increase the risk of mesothelioma.

Larry Roemmich worked at PSNS from 1968 to 1995 and was exposed to asbestos and asbestos-containing products as part of his work from 1968 until the early 1980's. In the 1970's, PSNS began recommending the 8710 mask to its workers based on the Bureau of Mines approval. Roemmich wore the 8710 mask from 1972 until around 1980 while working with asbestos-containing products. In 1980, the National Institute for Occupational Safety and Health

---

[1] The Bureau of Mines later became a part of the National Institute for Occupational Safety and Health (NIOSH).

[2] Asbestosis and pleural plaques are non-cancerous conditions. Asbestosis is scarring inside the lung tissue that can impact lung function, and pleural plaques are scarring in the lining of the lungs that may not necessarily impair lung function or cause cancer, but are a marker of significant asbestos exposure. As for the cancerous diseases, mesothelioma is the cancer that forms in the pleural lining around the lungs where the pleural plaques first form, and lung cancer is a cancer of the parenchymal tissue of the lung.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(NIOSH) warned 3M that single-use dust masks had the propensity to leak and should not be used to protect users against asbestos because of leakage from the face seal. But 3M continued to promote and sell its 8710 mask as protective against asbestos through 1986. In 2019, Roemmich was diagnosed with mesothelioma.

In January 2020, the Roemmiches sued 3M for product liability and negligence. 3M moved for summary judgment on all of the Roemmiches' claims and the Roemmiches moved for partial summary judgment on 3M's affirmative defense that PSNS's negligence was a superseding cause of Roemmich's injuries. The trial court denied both motions, and the case proceeded to trial in October 2020.

At trial, the Roemmiches sought to introduce expert testimony from Dr. Dwight Jewson and Dr. James Johnson. They wanted Dr. Jewson to testify regarding consumer expectations about the 8710 mask. Specifically, Dr. Jewson would have testified that he conducted a package test poll to understand what potential users would believe about the 3M 8710 Respirator based on the information displayed on its packaging. The study demonstrated that the 3M brand name provided the advertised product credibility.

Dr. Johnson was prepared to testify about his opinion on the 3M 8710 mask based on his review of 3M documents. First, Dr. Johnson intended to testify at trial that the 3M 8710 mask would collapse and create the potential for a poorer fit and leakage; that the mask's leakage created lower levels of protection than advertised; and that the wearer would not be able to detect leaks caused by

minor collapses in the masks, which would then become major collapses causing a poorer fit before completely collapsing. Second, Dr. Johnson would have testified that 3M documents showed that 3M had manipulated the NIOSH Silica Dust approval test with minimal and misleading supporting documentation to make the mask seem more effective.

3M moved in limine to exclude the expert testimony from Dr. Jewson and Dr. Johnson under Evidence Rule (ER) 702. The trial court granted the motion with respect to both experts, but allowed Dr. Johnson to testify on rebuttal regarding the NIOSH certification issue. Although the trial court stated that it would limit Dr. Johnson's testimony to issues related to the certification, Dr. Johnson was still able to incorporate his opinions about the fit and the imperceptible leakage over 3M's objections.

On October 28, before closing arguments, the Roemmiches moved for judgment as a matter of law under Civil Rule (CR) 50 with respect to 3M's superseding cause, contributory negligence, assumption of the risk, and failure to mitigate defenses. With respect to the superseding cause defense, the Roemmiches stated that 3M failed to show that PSNS knew that the NIOSH approval was not adequate and that the 8710 mask leaked in dangerous amounts, and that therefore the evidence was not sufficient to prove that PSNS had actual knowledge of the mask defects. The court denied the motion and gave a superseding cause jury instruction:

> A superseding cause is a new independent cause that breaks the chain of proximate causation between a defendant's product liability and/or negligence and an injury.

> If you find product liability and/or negligence of the defendant but that the sole proximate cause of the injury was a later independent intervening cause that the defendant, in the exercise of ordinary care, could not reasonably have anticipated, then any product liability and/or negligence of the defendant is superseded and such product liability and/or negligence was not a proximate cause of the injury. If, however, you find product liability and/or negligence and that in the exercise of ordinary care, the defendant should reasonably have anticipated the later independent intervening cause, then that cause does not supersede defendant's original product liability and/or negligence and you may find that the defendant's product liability and/or negligence was a proximate cause of the injury.

The trial court also granted 3M's request to instruct the jury on both the substantial factor and "but-for" causation standards. The resulting proximate cause instruction stated:

> If two or more causes combine to bring about an injury, the term "proximate cause" means a cause that was a substantial factor in bringing about the injury even if the injury would have occurred without that cause.
>
> If two or more causes did not combine to bring about an injury, the term "proximate cause" means a cause which in a direct sequence unbroken by any superseding cause produces the injury complained of and without which such injury would not have happened.
>
> There may be more than one proximate cause of an injury.

The jury returned a verdict for 3M. The jury found that 3M was negligent but that such negligence was not a proximate cause of Roemmich's disease.

The Roemmiches appeal.

ANALYSIS

The Roemmiches assert that the trial court abused its discretion by giving an erroneous proximate cause instruction and an unsupported superseding

6

cause instruction, and by excluding their expert witnesses without a Frye[3] hearing. We agree that the trial court gave an erroneous proximate cause instruction when it combined the "but-for" causation standard with the substantial factor standard. And we agree that the court erred in giving the superseding cause instruction. Both errors prejudiced the Roemmiches with respect to their negligence claim. But the court did not abuse its discretion by excluding the expert witnesses' testimony. We therefore affirm the products liability verdict and reverse and remand for a new trial on the negligence issue.

Jury Instructions

The Roemmiches contend that the court provided erroneous causation instructions to the jury which prejudiced them.

"Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." Bodin v. City of Stanwood, 130 Wn.2d 726, 732, 927 P.2d 240 (1996). A trial court may only give jury instructions that are supported by substantial evidence. State v. Douglas, 128 Wn. App. 555, 561, 116 P.3d 1012 (2005). Conversely, "[w]here substantial evidence supports a party's theory of the case, trial courts are required to instruct the jury on the theory." Taylor v. Intuitive Surgical, Inc., 187 Wn.2d 743, 767, 389 P.3d 517 (2017).

---

[3] Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923).

No. 82132-6-I/8

We review a trial court's decision whether to give a jury instruction " 'de novo if based upon a matter of law, or for abuse of discretion if based upon a matter of fact.' " Id. (quoting Kappleman v. Lutz, 167 Wn.2d 1, 6, 217 P.3d 286 (2009)). "[A]n instruction's erroneous statement of the applicable law is reversible error where it prejudices a party." Hue v. Farmboy Spray Co., 127 Wn.2d 67, 92, 896 P.2d 682 (1995). The party challenging the instruction bears the burden of demonstrating prejudice. Albertson v. State, 191 Wn. App. 284, 296, 361 P.3d 808 (2015). "Even if an instruction is misleading, it will not be reversed unless prejudice is shown." Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002). We presume prejudice if a jury instruction clearly misstates the law. Id.

1. Proximate Cause Instruction

The Roemmiches assert that the court erred by giving a combined "but-for" and substantial factor instruction to the jury and that this error was prejudicial. Because 3M did not provide sufficient evidence to warrant the "but-for" instruction, it was an abuse of discretion for the court to give the instruction. The substantial factor standard is the correct proximate cause standard when the exact cause of the harm cannot be determined.

To be liable for negligence, a plaintiff must show that a defendant's actions were a proximate cause of the plaintiff's injury. Hartley v. State, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). "Proximate cause is composed of both cause in fact and legal cause." Meyers v. Ferndale Sch. Dist., 197 Wn.2d 281, 289, 481 P.3d 1084 (2021). "[T]he cause in fact inquiry focuses on a 'but-for'

8

connection, [while] legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." Id.

"Traditionally, cause in fact has referred to the 'but-for' consequences of an act—the physical connection between an act and an injury." Daugert v. Pappas, 104 Wn.2d 254, 260, 704 P.2d 600 (1985). "The 'but-for' test requires a plaintiff to establish that the act complained of probably caused the subsequent disability." Id. But in cases involving multiple sources of toxic materials, plaintiffs need not prove individual causal responsibility. Hue, 127 Wn.2d at 91-92. Plaintiffs may instead prove causation using a substantial factor, rather than a "but-for" causation test. Mavroudis v. Pittsburgh-Corning Corp., 86 Wn. App. 22, 25, 935 P.2d 684 (1997). The substantial factor test requires plaintiffs "to show that a portion of [the toxic material] became part of the total cloud" of toxic materials that caused the damage. Id. at 30. The substantial factor test aids in the disposition of three types of cases:

> First, the test is used where either one of two causes would have produced the identical harm, thus making it impossible for plaintiff to prove the but-for test. In such cases, it is quite clear that each cause has played so important a part in producing the result that responsibility should be imposed on it. Second, the test is used where a similar, but not identical, result would have followed without the defendant's act. Third, the test is used where one defendant has made a clearly proven but quite insignificant contribution to the result, as where [they] throw[ ] a lighted match into a forest fire.

Daugert, 104 Wn.2d at 262. The change from the "but-for" test to the substantial factor test is normally justified only when a plaintiff is unable to show that one event alone was a cause of the injury. Id. The nature of asbestos products, as

9

well as the development of asbestosis and asbestos-related diseases, makes it extremely difficult for the plaintiff in an asbestos case to establish proximate cause.  Lockwood v. AC & S, Inc., 109 Wn.2d 235, 248, 744 P.2d 605 (1987). Therefore, the substantial factor test should be used in cases where it is difficult to establish the exact event or party that caused the harm.  Mavroudis, 86 Wn. App. at 31.

Roemmich was exposed to asbestos by a number of parties, so individual responsibility for the harm cannot be proven under the "but-for" test.  Daugert, 104 Wn.2d at 262.  3M asserts that the "but-for" test was appropriate because the Roemmiches' medical expert, Dr. Carl Brodkin, testified that Roemmich's exposure to asbestos from 1968 to 1972, before he had the 8710 mask, was a significant enough dose to cause mesothelioma by itself.  But Dr. Brodkin explained that this was a hypothetical because mesothelioma is a dose-response disease and it was also true that a worker like Roemmich, whose asbestos exposure continued on for another eight years, would be at increased risk for mesothelioma.  He testified that it is an aggregate risk and that both of those periods resulted in the aggregate dose that led to his mesothelioma.  Ultimately, he testified that all of Roemmich's asbestos exposures contributed to his injury and it was not possible to discern which specific exposure caused the injury. Thus, regardless of whether 3M's mask was the only reason for Roemmich's mesothelioma, there was substantial evidence from which the jury could determine that the mask was defective and contributed to his injury.  And because the harm done by 3M and the other defendants was identical—

10

Roemmich developing mesothelioma—the substantial factor test applies.
Therefore, the court improperly instructed the jury on the applicable law by giving
a combined "but-for" and substantial factor test instruction.

3M disagrees and contends that the rule from Mavroudis should not apply.
In Mavroudis, a jury found that an asbestos supplier was liable for Mavroudis's
mesothelioma, and the supplier assigned error to the substantial factor jury
instruction, claiming that a "but-for" instruction should have been used instead.
Mavroudis, 86 Wn. App. at 25. A pathologist specializing in asbestos-related
disease testified that the asbestos included in the products that Mavroudis
handled could cause mesothelioma, that the scientific information indicated that
all of Mavroudis's exposure to asbestos at the PSNS from 1957 to 1963 played a
role in causing the mesothelioma, and that he could not say which exposures
were, in fact, the cause of the condition. Id. at 27. The pathologist also testified
that as little as 10 percent of Mavroudis's exposure was sufficient to cause
mesothelioma. Id. The Mavroudis court applied our Supreme Court's finding
from Hue, stating that the asbestos supplier's assignment of error was incorrect,
because where multiple sources of toxic materials exist, "the plaintiff only needed
to show that a portion of a defendant's pesticide became part of the total cloud of
pesticide that caused the damage." Id. at 30; Hue, 127 Wn.2d at 91-92.

3M specifically asserts that this case is distinguishable from Mavroudis
because here there are not multiple defendants whose products were
independently capable of causing harm and who could escape liability if a "but-
for" causation test was applied, 3M is a non-asbestos defendant, and the mask at

11

issue is a non-harmful respirator because it did not contain asbestos. But here, as in Mavroudis, experts testified that Roemmich's mesothelioma was a cumulative harm where the exact event or party that caused the harm could not be identified. Although Roemmich's exposure to asbestos varied over the years, 3M fails to point to a specific time or exposure that led to Roemmich's injury. Roemmich's mesothelioma developed after his continued exposure to asbestos at different sources. The evidence at trial established that 3M's mask contributed at least partly to Roemmich's exposure and harm, regardless of the other exposures. Applying the "but-for" causation test would absolve 3M of responsibility despite this evidence. The court erred in giving an instruction combining the "but-for" and substantial factor causation tests.

### 2. Superseding Cause Instruction

The Roemmiches next challenge the trial court's superseding cause instruction, asserting that the instruction was unsupported because any negligence on the part of PSNS in failing to train Roemmich on the use of the 8710 mask was foreseeable, because there was no evidence in the record that PSNS had actual specific knowledge of the defects, and because the instruction failed to make 3M's burden of proof clear. We agree.

An act generally is a proximate cause of an injury if it produces the injury. Crowe v. Gaston, 134 Wn.2d 509, 519, 951 P.2d 1118 (1998). But when a new, independent act breaks the chain of causation, it supersedes the original act as the proximate cause of the injury. Id. The Restatement of Torts defines "superseding cause" as "an act of a third person or other force which by its

12

intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." RESTATEMENT (SECOND) OF TORTS § 440 (AM. LAW INST. 1965).

In determining whether an intervening act constitutes a superseding cause we consider "whether (1) the intervening act created a *different type of harm* than otherwise would have resulted from the actor's negligence; (2) the intervening act was *extraordinary* or resulted in extraordinary consequences; [and] (3) the intervening act *operated independently* of any situation created by the actor's negligence." Campbell v. ITE Imperial Corp., 107 Wn.2d 807, 812-13, 733 P.2d 807 (1987) (alterations in original) (citing RESTATEMENT § 442). The act has to be " 'so highly extraordinary or unexpected that [it] can be said to fall [ ] [out of] the realm of reasonable foreseeability as a matter of law,' " and " '[i]f the acts . . . are within the ambit of the hazards covered by the duty imposed upon the defendant, they are foreseeable and do not supersede the defendant's negligence.' " Cramer v. Dep't of Highways, 73 Wn. App. 516, 521, 870 P.2d 999 (1994) (some alterations in original) (quoting Brashear v. Puget Sound Power & Light Co., 33 Wn. App. 63, 69, 651 P.2d 770 (1982), rev'd on other grounds, 100 Wn.2d 204, 667 P.2d 78 (1983)). Thus, " 'only intervening acts which are not reasonably foreseeable are deemed superseding causes.' " State v. Frahm, 193 Wn.2d 590, 600, 444 P.3d 595 (2019) (quoting Crowe, 134 Wn.2d at 519).

Whether a third party's intervening act rises to the level of a superseding cause is generally a question of fact for the jury, but it may be determined as a matter of law if reasonable minds could not differ as to the foreseeability of the

13

act. Frahm, 193 Wn.2d at 601; Smith v. Acme Paving Co., 16 Wn. App. 389, 396, 558 P.2d 811 (1976).

Campbell and Albertson are instructive. In Campbell, the appellant worked as a wireman for Snohomish County Public Utility District (PUD) and as part of his job cleaned roof bushings located on top of metal-clad switchgears. 107 Wn.2d at 809. Electrical power was not supposed to be flowing through the feeder lines on the bushings when they were cleaned, but because a "circuit breaker on one of those feeder lines was closed to allow power to be 'backfed' . . . . [it] caused both the main bushings and the auxiliary bushings to be energized while the initial maintenance was being performed." Id. at 809-10. When Campbell attempted to clean the bushings with the steel wool pad, he was "jarred by a high-voltage surge of electricity" and was severely injured. Id. at 810.

Campbell sued ITE Imperial, who manufactured the unusual wiring configuration, "on theories of strict product liability, negligence, and breach of warranty." Id. at 811. At the end of testimony, "the trial court instructed the jury that if [ ] PUD was negligent in failing to discover and warn of the defect and take appropriate precautions and if PUD's negligence was 'so unanticipated that it can be said to fall without the realm of reasonable foreseeability' by the manufacture," then ITE would be relieved of liability because PUD's negligence was a superseding cause. Id. at 812. The jury returned a verdict in favor of ITE. Id.

On appeal, our Supreme Court concluded that PUD's negligence did not constitute a superseding cause. Id. at 815. It reasoned that because PUD's

intervening negligence did not create a different type of harm, PUD's intervening negligence did not operate independently of the danger created by ITE, nor did PUD have actual or specific knowledge that the product was unreasonably unsafe and failed to warn or protect. Id. at 817.

The court came to a similar conclusion in Albertson, where a newborn suffered from abuse by a parent. After the infant's first trip to the hospital, the Child Protective Service (CPS) social worker assigned to the infant's case formulated a safety plan for the parents to follow. Albertson, 191 Wn. App. at 291. But the safety plan was not implemented, the parents did not participate, the case worker failed to follow up, and the infant was abused again. Id. at 292. The Department of Social and Health Services (DSHS) initiated a termination petition, and after the trial court terminated parental rights, the infant's guardians sued DSHS for conducting a negligent investigation. Id. at 293.

The trial court instructed the jury that DSHS was claiming as a defense that any injuries to the child were only caused by the parent. Id. at 293-94. It gave an instruction defining proximate cause as " 'a cause which in a direct sequence *unbroken by any superseding cause* produces the injury complained of and without which such injury would not have occurred,' " and defined superseding cause as well. Id. at 294 (emphasis in original). The jury found that DSHS was negligent in its investigation but that its negligence was not a proximate cause of the infant's injury and entered judgment in favor of DSHS. Id. at 295. The infant's guardians appealed and claimed that the court erred in instructing the jury on superseding cause in its proximate cause instructions

because the instructions allowed DSHS to argue that the parent's "subsequent abuse of [the infant] . . . was 'a superseding cause' of [the infant's] injuries and broke the causal chain between DSHS's negligence and [the infant's] injuries, even if the jury found, as it did, that DSHS was negligent." Id. at 298.

The court held that because the abuse the infant endured was "precisely the kind of harm that would ordinarily occur as a result of a faulty or biased investigation of child abuse" and the parent's abuse was foreseeable, the trial court erred in instructing the jury on the issue of superseding cause and reversed accordingly. Id. at 298-99.

Here, PSNS's negligence in failing to train Roemmich on the use of the 8710 mask was reasonably foreseeable, and therefore not an extraordinary act. There was no evidence presented at trial that PSNS had actual specific knowledge of the defects that made the 8710 mask unsafe for asbestos use. PSNS's negligence and 3M's mask defect both led to the same harm that otherwise would have resulted from 3M's failure to warn, which was exposure to asbestos and the resulting mesothelioma. In addition, PSNS's failure to train Roemmich on proper mask usage did not result in any injury that was extraordinary or different than the consequences of inhaling asbestos through a defective mask. Finally, PSNS did not operate independently from the danger that 3M created because 3M's failure to warn of the mask leakage is the same hazard that makes PSNS's failure to train Roemmich on the mask use unreasonably unsafe. Therefore, the superseding cause instruction was erroneous because it was not supported by substantial evidence. Because the

16

intervening act's foreseeability establishes that the instruction was not appropriate, we need not reach the failure to warn and the burden of proof issues.

### 3. Prejudice

Both instructions misinformed the jury and prejudiced the Roemmiches. Because the proximate cause instruction misstated the law, we presume it to be prejudicial. Keller, 146 Wn.2d at 249. Furthermore, 3M explicitly relied on the instruction during closing argument and the jury could have found that, although negligent, 3M was not the proximate cause of Roemmich's injury because he would have developed mesothelioma from his other asbestos exposures regardless of 3M's negligent acts. Additionally, having been given the improper superseding cause instruction, the jury could have found that 3M's negligence was the proximate cause of Roemmich's injury, but still found 3M not liable based on PSNS's concurrent negligence. Therefore, we reverse and remand for a new trial on negligence with the correct jury instructions.

### Strict Product Liability and Expert Testimony

The Roemmiches contend that the trial court erred by excluding expert testimony regarding consumer expectations and product defects for their strict product liability claim. The Roemmiches claim that they were prejudiced because the trial court should have conducted a Frye hearing instead of only relying on ER 702. We conclude that the trial court did not err in excluding the testimony and affirm the jury's verdict on the strict product liability claim.

No. 82132-6-I/18

"In Washington, expert testimony must satisfy both the Frye test and ER 702." State v. Arndt, 194 Wn.2d 784, 798, 453 P.3d 696 (2019). Under ER 702, if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." Id. at 798 n.6. Decisions to admit or exclude testimony under ER 702 are reviewed for abuse of discretion. Id. at 798. In reviewing for abuse of discretion, "we may affirm the trial court on any basis that the record supports." Id. at 799. " 'A court abuses its discretion by issuing manifestly unreasonable rulings or rulings based on untenable grounds.' " L.M. v. Hamilton, 193 Wn.2d 113, 134, 436 P.3d 803 (2019) (quoting Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 919, 296 P.3d 860 (2013)). " 'Unreliable testimony does not assist the trier of fact.' " L.M., 193 Wn.2d at 137 (quoting Lakey, 176 Wn.2d at 918).

1. Dr. Jewson's Testimony on Consumer Expectations

The Roemmiches assert that it was legal error for the court not to hold a Frye hearing before determining that Dr. Jewson's methodology was speculative and unreliable. They claim that the court erred in rejecting Dr. Jewson's testimony because it was based on methodologies that were generally accepted and produced no novel evidence. The Roemmiches further claim that the trial court's conclusion that Dr. Jewson's testimony would not have been helpful to the jury is based on an incorrect understanding of product liability law because the court believed that a manufacturer's advertisements are not relevant to consumer

18

expectations unless reviewed and relied upon by the injured plaintiff, Roemmich, and cite to Rublee v. Carrier Corp., 192 Wn.2d 190, 204, 428 P.3d 1207 (2018) in support of this claim.  We disagree.

In Rublee, our Supreme Court stated that, "it is appropriate to assess apparent manufacturer liability by considering all evidence relevant to reasonable consumers of the product at issue, consistent with Washington's 'ordinary consumer expectation' approach."  Id. at 210.  Under a reasonable consumer of the product test, "the plaintiff is required to show that an ordinary, reasonable consumer could have (1) inferred from the defendant's representations in the advertising, distribution, and sale of the product that the defendant manufactured the product and (2) relied on the defendant's reputation as an assurance of the product's quality."  Id. at 210-11.

Here, Dr. Jewson's testimony did not involve novel scientific evidence which required a Frye hearing and the court appropriately applied ER 702 in determining whether the expert testimony should have been admitted.  Though 3M's advertisements did not specifically need to be reviewed by Roemmich for testimony about an ordinary consumer's reasonable expectations to be admissible under Rublee, the court nonetheless correctly concluded that Dr. Jewson's testimony was speculative and unreliable.  Dr. Jewson did not have scientific, technical, or other specialized knowledge that would have assisted the jury in understanding the evidence or determining the fact in issue.  The court found that Dr. Jewson did not qualify as an expert based on experience because he did not have any formal training in public-opinion surveys and had never

19

submitted survey data in court. Cf. Watness v. City of Seattle, 11 Wn. App. 2d 722, 751-52, 457 P.3d 1177 (2019) (An expert was qualified because of their biomechanical engineer experience of 40 years combined with academic and forensic experience). Additionally, evidence indicated that Dr. Jewson did not follow well-established methodologies for consumer and public opinions polls. The court did not abuse its discretion by excluding Dr. Jewson's testimony under ER 702.

2. Dr. Johnson's Testimony on Product Defects

The Roemmiches assert that the trial court applied an incorrect legal standard and abused its discretion in partially excluding Dr. Johnson's testimony without a Frye hearing and instead excluding it under ER 702. The Roemmiches specifically claim that Dr. Johnson's testimony was not speculative, it would have assisted the jury, and that the court ignored legal key elements of the expert's claims. We disagree.

The trial court initially excluded Dr. Johnson's testimony under ER 702 as speculative, unreliable and not based on scientific, technical, or other specialized knowledge that would assist the jury in understanding the evidence. The court later indicated that testimony based on two undisclosed studies would be excluded as unfairly prejudicial, but that Dr. Johnson might be allowed to testify on rebuttal if 3M asserted or implied that the 8710 respirator was not defective because of its NIOSH certification or its OSHA assigned protective factor of 10. The trial court did not abuse its discretion by partially excluding Dr. Johnson's testimony under ER 702. Moreover, the court ultimately allowed Dr. Johnson to

testify on the 8710 mask's defects like pressure drop and leakage in rebuttal after

determining that 3M had opened the door to the testimony.  In addition, another

expert witness of the Roemmiches, Darrell Bevis, had already testified on the

same topic as Dr. Johnson regarding the mask's leakage.  We conclude that the

court did not err in excluding Dr. Johnson's testimony.

We affirm the jury verdict on the product liability claim and reverse and

remand for a new trial with regard to the negligence claim.

_Smith, a.C.g._

WE CONCUR:

_____        _Andrus, C.g._

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.