# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| DAN ALBERTSON, as Limited Guardian ad Litem for A.R.B.,[†] an incapacitated minor,<br><br>Appellant,<br><br>v.<br><br>STATE OF WASHINGTON acting through its DEPARTMENT OF SOCIAL & HEALTH SERVICES,<br><br>Respondent. | No.  45748-2-II<br><br><br><br><br>PUBLISHED OPINION |

SUTTON, J.—ARB, through his guardian ad litem, Dan Albertson, sued the Department of Social and Health Services (DSHS) for negligent investigation of alleged abuse by his father, Jacob Mejia.  A jury found that DSHS was negligent in its investigation of ARB's injuries, but that its actions were not a proximate cause of ARB's injuries.  ARB appeals the judgment in favor of DSHS based on several alleged evidentiary errors and the trial court's jury instructions on superseding cause.  DSHS cross-appeals, asserting that the trial court erred by instructing the jury on DSHS's duty to ARB and denying DSHS's CR 50 motions to dismiss.

---

[†] It is appropriate to provide some confidentiality in this case.  Accordingly, it is hereby ordered that initials will be used in the case caption and in the body of the opinion to identify the minor involved.

We hold that (1) the trial court erred by instructing the jury on superseding cause, (2) the trial court's jury instruction misstated DSHS's duty to ARB, and (3) the trial court did not err in denying DSHS's CR 50 motions to dismiss. Therefore, we reverse and remand for a new trial.[1]

FACTS

I. ARB's November 18 and December 22 Injuries

ARB was born in late 2008 to Sarah Tate and Mejia. ARB's birth was unremarkable and he had no signs of trauma or physical injury as a newborn. Tate and Mejia lived with Mejia's parents. Mejia was attending high school when ARB was born. Tate had already graduated from high school, and she was ARB's primary caregiver. Five days after ARB's birth, he was a healthy baby.

On the morning of November 18, Tate found that ARB's left arm was limp. Mejia had fed ARB, changed him, swaddled him, and placed him back into bed two hours earlier. Tate, Mejia, and Mejia's mother brought ARB to Harrison Medical Center's emergency room that night.

X-rays showed that ARB's left humerus bone was broken. The break was a spiral fracture, which typically requires a twisting, pulling, or jerking motion with greater than normal force required to accomplish. Tate and Mejia first told the emergency room doctor, Dr. William Moore, that the injury could have been caused at a wedding three days beforehand when ARB was passed around. Later, Tate explained that she noticed ARB's limp arm after Mejia swaddled him that morning. Dr. Moore suspected that ARB's injury was caused from abuse and he contacted law

---

[1] ARB also argues that (1) we should hold that DSHS's negligence was a proximate cause of ARB's injury as a matter of law and (2) the jury's verdict was inconsistent. Because we reverse and remand for a new trial, we do not address these issues, nor do we address his challenge to the trial court's evidentiary rulings.

enforcement, who placed ARB into protective custody with Child Protective Services (CPS). Nicole Miller, a social worker at Harrison Medical Center, referred ARB's case to DSHS after she interviewed the family.

ARB was transferred to Mary Bridge Children's Hospital, where he was placed on a hospital hold.[2] The emergency room physician at Mary Bridge, Dr. Jeffrey Bullard-Berent, ordered a skeletal survey and a CT scan of ARB's head. Those studies did not show any other fractures, but did find a subscleral hemorrhage.

Dr. Bullard-Berent was concerned that ARB had been abused because ARB had two "abnormal" injuries, a broken humerus and the hemorrhage. Clerk's Papers (CP) at 4068. He did not believe that Tate and Mejia's explanation for ARB's broken bone, swaddling, was consistent with the injury. Dr. Victoria Silas, a pediatric orthopedic specialist who examined and treated ARB's broken arm at Mary Bridge, was also concerned that ARB's broken arm had been caused by non-accidental trauma.

On November 19, Dr. Yolanda Duralde, a child abuse and neglect medical specialist and the medical director of child abuse intervention at MultiCare Health Systems, interviewed Tate and Mejia at the request of Heather Lofgren, the CPS social worker assigned to investigate whether ARB had been abused. Dr. Duralde also examined ARB. Dr. Duralde reported to Lofgren that Tate and Mejia were appropriately concerned and remorseful about ARB's injury and interacted with him well. During the interview, Mejia demonstrated how he swaddled ARB using a doll. Mejia put the doll's left arm behind its back, used a small blanket to swaddle it, and rotated the

---

[2] Under RCW 26.44.056, a hospital may hold a child provided that within 72 hours CPS makes contact with the child and determines whether or not it is safe for the child to return home.

3

doll's arm forward so that the arm was on its side again. According to Dr. Duralde, Mejia's demonstration was consistent with ARB's injury. Dr. Duralde did not contact Dr. Silas about ARB, but she was aware that doctors at Harrison and Mary Bridge were concerned that ARB's broken arm was caused by abuse. Based on Dr. Duralde's opinion that ARB's injury was accidental, DSHS returned him to Tate and Mejia's care on November 19.

In the early morning hours of December 23, ARB's parents brought him to Harrison again. ARB's skull was fractured and his brain tissue had been injured. He was experiencing seizures and had bleeding on his brain. ARB had multiple other skeletal fractures, including rib fracture, clavicular fracture, and a fracture to his right humerus.

Tate and Mejia said that ARB had been lying on the couch that evening, December 22, when their dog jumped onto the furniture, bouncing ARB onto the floor. Dr. Duralde concluded that ARB's December 22 injuries were caused in part by shaking and were probably caused by non-accidental trauma. As a result of the injuries, ARB is permanently physically and cognitively disabled and will need 24-hour care for the rest of his life.

II. DSHS's INVESTIGATION OF ARB's NOVEMBER 18 INJURY

At the time she was assigned to investigate ARB's case, Lofgren had recently completed her social worker education and training. After she received Dr. Duralde's report on November 19, Lofgren and her supervisor removed the hospital hold on ARB, which allowed Tate and Mejia to take him home. Dr. Duralde's opinion was the sole reason for Logren's determination that ARB was not at risk of harm in the care of his parents.

On November 19 and 20, Lofgren completed several tasks to conduct her investigation after ARB was returned to Tate and Mejia's care. Lofgren contacted Tate and Mejia's high school,

which did not report any concerns about either of them. Lofgren also completed a background check on all the family members living with ARB, which did not uncover any criminal history or CPS referrals for child abuse.[3]

Lofgren conducted a home visit at the Mejias' house the day after ARB was released to Tate and Mejia's care. She interviewed Tate, Mejia, and Mejia's father about the home environment and their plans for the future. At this home visit, Lofgren did not interview Tate and Mejia separately, even though she knew that they had provided inconsistent stories about how ARB's arm had been injured.

During this home visit, Lofgren formulated a safety plan with Tate and Mejia.[4] The safety plan provided for a public health nurse, who would visit ARB in his home once or twice a month. The safety plan stated that Lofgren would follow up on retaining the service of a public health nurse, but she did not do so because she believed that the responsibility belonged to a person in another department. The safety plan also provided that Tate and Mejia would find parenting classes and contact Lofgren if they could not find one close to their home, but neither of them contacted Lofgren after the home visit. Lofgren did not follow up with them about the parenting class requirement. Although Mejia's father was the only other family member present during the home visit and he did not sign the document, the safety plan also provided that "[a]ll family members agree to call CPS if they have concerns [regarding] care of [ARB]." CP at 182.

---

[3] Tate had one referral history in the CPS database, but she was the alleged victim of child abuse and not the suspected perpetrator.

[4] CPS policy required Lofgren to formulate a safety plan because her safety assessment concluded that ARB was at risk of harm. A safety assessment is a tool CPS investigators use to determine whether a child is safe in the home and whether specific services need to be provided.

Lofgren concluded that the November 18 injury was accidental. But she did not obtain the medical records from Harrison, Mary Bridge, or ARB's pediatrician. Lofgren explained that she did not contact any other doctor besides Dr. Duralde because CPS policy directed her to rely on Dr. Duralde's opinion as a child abuse expert, and she expected Dr. Duralde to complete a full assessment, including reviewing medical records.

There is no record of any DSHS employee having any contact with Tate or Mejia between November 21 and December 23, 2008, and DSHS did not provide any of the services that Tate and Mejia agreed to complete in the safety plan. Because Lofgren did not believe that ARB was in imminent risk of harm, she did not seek court intervention to require Tate or Mejia to engage in any services by filing a dependency petition, nor did she seek Mejia's voluntary separation from ARB because Lofgren determined that the November 18 injury, though serious, was accidental.

## III. PROCEDURE

Following ARB's December 22 injuries, DSHS initiated a dependency petition on December 23. DSHS then initiated a termination petition, and after trial the trial court terminated Tate's and Mejia's parental rights of ARB. Arthur and Melissa Barnum, as the guardians of ARB, sued DSHS for conducting a negligent investigation.[5]

At trial, DSHS moved to dismiss ARB's claims under CR 50 after ARB rested his case and again before the trial court submitted the case to the jury. DSHS argued that ARB did not establish

---

[5] The Barnums also brought claims against Dr. Duralde and Mary Bridge, but they voluntarily dismissed these claims after the trial court granted those parties' motions for partial summary judgment.

6

any legal or factual basis that would allow the jury to find that DSHS breached a duty to ARB that proximately caused his injuries. The trial court denied both motions.

A. JURY INSTRUCTIONS

On DSHS's duty to ARB, the trial court instructed the jury that "[t]he State of Washington through its divisions or departments, must conduct a reasonable investigation of a report of potential child abuse. A claim against Defendant DSHS for negligent investigation is available when DSHS conducts a negligent investigation that results in a harmful placement decision." CP at 3969 (Jury Instruction 10). DSHS objected to this instruction because it was inconsistent with the Washington Supreme Court's most recent opinion on DSHS's duty in a negligent investigation claim, *M.W. v. Department of Social & Health Services*, 149 Wn.2d 589, 70 P.3d 954 (2003).

On the issue of superseding cause, the trial court gave the jury three instructions. First, the trial court instructed the jury that "[DSHS] claims as a defense that if there are injuries as claimed, only . . . Mejia caused injury to [ARB]." CP at 3962 (Jury Instruction 3). Second, the trial court instructed the jury that proximate cause means "a cause which in a direct sequence *unbroken by any superseding cause* produces the injury complained of and without which such injury would not have occurred." CP at 3973 (emphasis added) (Jury Instruction 14). Third, the trial court instructed the jury on the definition of "superseding cause,"

> A superseding cause is a new independent cause that breaks the chain of proximate causation between a defendant's negligence and an injury.
>
> If you find that the defendant was negligent, but that the sole proximate cause of the injury was a later independent intervening act of a person not a party to this action that the defendant, in the exercise of ordinary care, could not reasonably have anticipated, then any negligence of the defendant is superseded and such negligence was not a proximate cause of the injury. If, however, you find that the defendant was negligent and that in the exercise of ordinary care, the defendant should reasonably have anticipated the later independent intervening act,

7

then that act does not supersede defendant's original negligence and you may find that the defendant's negligence was a proximate cause of the injury.

It is not necessary that the sequence of events or the particular resultant injury be foreseeable. It is only necessary that the resultant injury fall within the general field of danger which the defendant should reasonably have anticipated.

CP at 3975 (Jury Instruction 16). ARB objected to jury instructions 14 and 16 on the basis that instructing the jury on superseding cause was inappropriate in this case.

## B. CLOSING ARGUMENT

During closing argument, ARB argued that DSHS negligently investigated ARB's injuries because DSHS (1) conducted a faulty safety plan, failed to follow up, and failed to obtain ARB's medical and law enforcement records, (2) returned ARB to his parents' care without restrictions or separation from Mejia in violation of its own policies and procedures, (3) did not institute a child protection team (CPT),[6] and (4) took no action to keep ARB safe between November 21 and December 23, 2008.

In response, DSHS argued to the jury that its investigation was reasonable. DSHS also argued that if the jury found that it conducted a negligent investigation, DSHS's negligence was not a proximate cause of ARB's injuries because Mejia was "the sole proximate cause and a superseding cause in this case." 17 Verbatim Report of Proceedings (VRP) at 2057.

## C. JURY VERDICT

The jury found that DSHS was negligent in its investigation, but that its negligence was not a proximate cause of ARB's injury. The trial court entered judgment in favor of DSHS.

ARB appeals. DSHS cross-appeals.

---

[6] RCW 74.14B.030 requires a CPT, a team of multidisciplinary professionals, to be available for consultation on all cases where there is risk of serious harm to the child.

ANALYSIS

ARB argues that the trial court erred in instructing the jury on superseding cause in its proximate cause jury instructions. DSHS argues that the trial court erred in instructing the jury on DSHS's duty to ARB and erred in denying its motions to dismiss. We agree with both parties' claims relating to the trial court's jury instructions, but disagree that the trial court erred in denying DSHS's motions to dismiss.

I. STANDARD OF REVIEW ON JURY INSTRUCTIONS

We review a challenge to a jury instruction de novo if it is based upon a matter of law. *Kappelman v. Lutz*, 167 Wn.2d 1, 6, 217 P.3d 286 (2009). Jury instructions are sufficient if they allow each party to argue its case, are not misleading, and properly inform the jury of the applicable law when read as a whole. *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 117, 323 P.3d 1036 (2014).

An erroneous jury instruction is reversible error only if the error was prejudicial. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 860, 281 P.3d 289 (2012). The party challenging the jury instruction bears the burden to demonstrate prejudice. *Fergen v. Sestero*, 182 Wn.2d 794, 803, 346 P.3d 708 (2015). We presume prejudice, however, if a jury instruction clearly misstates the law. *Keller v. City of Spokane*, 146 Wn.2d 237, 249-50, 44 P.3d 845 (2002).

II. PROXIMATE CAUSE: SUPERSEDING CAUSE JURY INSTRUCTIONS

ARB challenges the trial court's instructions to the jury on superseding cause because the instructions allowed the jury to find that Mejia was a superseding cause of ARB's injuries. We agree.[7]

To be liable for negligence, a defendant's actions must be a proximate cause of the plaintiff's injury. *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Proximate cause has two elements: (1) cause in fact and (2) legal causation. *Hartley*, 103 Wn.2d at 777. An act generally is a proximate cause of an injury if it produces the injury. *Riojas v. Grant County Pub. Util. Dist.*, 117 Wn. App. 694, 697, 72 P.3d 1093 (2003). However, if a new, independent intervening act breaks the chain of causation, it supersedes the defendant's original act and is no longer the proximate cause of the injury. *Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 813, 733 P.2d 969 (1987).

"'Whether an act may be considered a superseding cause sufficient to relieve a defendant of liability depends on whether the intervening act can reasonably be foreseen by the defendant;

---

[7] DSHS argues that ARB did not preserve this claim of error because (1) ARB argued at trial only that his injury was foreseeable as a matter of law, (2) ARB's objection related only to the segregation of damages jury instruction, citing *Rollins v. King County Metro Transit*, 148 Wn. App. 370, 199 P.3d 499 (2009), and (3) on appeal, ARB raises a new objection based on foreseeability. The record demonstrates that ARB's objection referred to the superseding cause instructions and that this objection sufficiently appraised the trial court of the nature of his objection. *Washburn v. City of Federal Way*, 178 Wn.2d 732, 747, 310 P.3d 1275 (2013) ("So long as the trial court understands the reasons a party objects to a jury instruction, the party preserves its objection for review.").

DSHS also argues that ARB did not preserve the error because he did not propose a special verdict form that differentiated between a jury finding of no proof of proximate cause versus a jury finding that Mejia's abuse was a superseding cause. Because we hold that instructing the jury on superseding cause was error and we reverse for a new trial, we do not reach this issue.

only intervening acts which are *not* reasonably foreseeable are deemed superseding causes.'" *Rioja*, 117 Wn. App. at 697 (internal quotation marks omitted) (quoting *Cramer v. Dep't of Highways*, 73 Wn. App. 516, 520, 870 P.2d 999 (1994)); *see also Campbell*, 107 Wn.2d at 813. Reasonable foreseeability does not require that the precise manner or sequence of events in which a plaintiff is harmed be foreseeable. *Anderson v. Dreis & Krump Mfg. Corp.*, 48 Wn. App. 432, 443, 739 P.2d 1177 (1987). Rather, as the *Restatement (Second) of Torts* explains, "'[I]f the likelihood that a third person may act in a particular manner is . . . one of the hazards which makes the [defendant] negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [defendant] from being liable'" for the injury caused by the defendant's negligence. *Campbell*, 107 Wn.2d at 813 (some alterations in original) (quoting RESTATEMENT (SECOND) OF TORTS § 449 (1965)).

We analyze whether an intervening force is a superseding cause according to several factors: (1) whether the intervening force brings about a different kind of harm that would have otherwise resulted from the defendant's negligence, (2) whether the intervening act was extraordinary or its consequences were extraordinary, and (3) whether the intervening act operated independently of a situation created by the defendant's negligence. *Campbell*, 107 Wn.2d at 812-13 (citing RESTATEMENT (SECOND) OF TORTS § 442). It is reversible error where the trial court erroneously instructs the jury on superseding cause. *Campbell*, 107 Wn.2d at 817.

Here, the trial court's instructions on superseding cause allowed DSHS to argue that Mejia's subsequent abuse of ARB on December 22 was "a superseding cause" of ARB's injuries and broke the causal chain between DSHS's negligence and ARB's injuries, even if the jury found, as it did, that DSHS was negligent. Thus, these jury instructions allowed the jury to consider

11

whether Mejia's abuse of ARB on December 22 was a superseding cause of DSHS's alleged negligence.[8]  This was error.

Mejia's abuse of ARB on December 22 was precisely the kind of harm that would ordinarily occur as a result of a faulty or biased investigation of child abuse that results in a harmful placement decision by DSHS—further child abuse by the abuser.  *Campbell*, 107 Wn.2d at 812-13.  We cannot say that Mejia's abuse of ARB was "'so highly extraordinary or improbable'" that no reasonable person could be expected to anticipate it.  *Seeberger v. Burlington N. R.R. Co.*, 138 Wn.2d 815, 823, 982 P.2d 1149 (1999) (quoting *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 323, 255 P.2d 360 (1953)).  Mejia's abuse of ARB is "'one of the hazards'" that DSHS's duty to investigate allegations of child abuse is designed to prevent.  *Campbell*, 107 Wn.2d at 813 (quoting RESTATEMENT (SECOND) OF TORTS § 449).  Mejia's abuse of ARB did not act "independently of any situation" created by DSHS's alleged negligence.  RESTATEMENT (SECOND) OF TORTS § 442(c).  We cannot say that Mejia's abuse of ARB was not reasonably foreseeable.  Thus, we hold that the trial court erred in instructing the jury on the issue of superseding cause and we reverse accordingly.  *Campbell*, 107 Wn.2d at 817.

III.  DSHS'S DUTY TO ARB: NEGLIGENT INVESTIGATION JURY INSTRUCTION

DSHS argues the trial court's jury instruction 10 on its duty to ARB was error because it was inconsistent with the limitation of DSHS's duty to ARB as set out in *M.W.*  DSHS also argues

---

[8] Contrary to DSHS's argument that the jury's verdict could reflect that it found lack of evidence of proximate cause rather than finding superseding cause, DSHS never argued that ARB had *failed* to present evidence that it was the proximate cause of ARB's injuries.  Rather, during closing argument DSHS argued that if the jury found it conducted a negligent investigation, DSHS's negligence was not a proximate cause of ARB's injuries because Mejia was "the sole proximate cause and a superseding cause in this case."  17 VRP at 2057.

that its proposed jury instructions on its duty to ARB correctly stated the law, and the trial court erred by rejecting those proposed instructions. We agree.

To prove a negligence claim, the plaintiff must show (1) that the defendant owed a duty to him or her, (2) that the defendant breached that duty, (3) injury resulting from the breach, and (4) proximate cause between the defendant's breach of duty and the plaintiff's injury. *Hartley*, 103 Wn.2d at 777. Whether the defendant owes a duty to the plaintiff is a question of law that we review de novo. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

ARB brought his cause of action against DSHS under former RCW 26.44.050,[9] which provides that when DSHS receives a report of possible child abuse or neglect it "must investigate" that report and "where necessary to refer such report to the court." CP at 26-27; RCW 26.44.050. Under RCW 26.44.050, DSHS has a statutory duty to investigate reports of child abuse. The purpose of RCW 26.44.050 is to protect children and to preserve the integrity of the family. *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 80, 1 P.3d 1148 (2000); RCW 26.44.010.[10]

---

[9] Former RCW 26.44.050, *amended by* LAWS OF 2012, ch. 259, § 5. We will refer to the current version of RCW 26.44.050, as the 2012 amendment is irrelevant to this opinion.

[10] RCW 26.44.010, the legislature's declaration of the purpose of chapter 26.44, provides,

The bond between a child and his or her parent . . . is of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent . . . where a child is deprived of his or her right to conditions of minimal nurture, health, and safety, the state is justified in emergency intervention based upon verified information; and therefore the Washington state legislature hereby provides for the reporting of such cases to the appropriate public authorities. It is the intent of the legislature that, as a result of such reports, protective services shall be made available in an effort to prevent further abuses, and to safeguard the general welfare of such children.

Washington law does not recognize a general tort claim for negligent investigation. *M.W.*, 149 Wn.2d at 601. A plaintiff does not have an actionable breach of duty claim against DSHS "every time the state conducts an investigation that falls below a reasonable standard of care by, for example, failing to follow proper investigative procedures." *Petcu v. State*, 121 Wn. App. 36, 59, 86 P.3d 1234 (2004). In other words, the statutory cause of action for negligent investigation under RCW 26.44.050 does not include "protecting children from all physical or emotional injuries that may come to them directly from the negligence of DSHS investigators." *M.W.*, 149 Wn.2d at 598. Instead, a claim for negligent investigation against DSHS is available "only when DSHS conducts a biased or faulty investigation that leads to a harmful placement decision, such as placing the child in an abusive home, removing the child from a nonabusive home, or failing to remove a child from an abusive home." *M.W.*, 149 Wn.2d at 591.

ARB relies on *Yonker v. Dep't of Soc. & Health Servs.*, 85 Wn. App. 71, 80-81, 930 P.2d 958 (1997) for the proposition that RCW 26.44.050 imposes a duty on DSHS "to provide services during the report and investigation of suspected abuse." Reply Br. of Appellant at 42. However, *Yonker* specifically stated that it did not address "the scope or intensity of the investigation required" of DSHS after it receives a report of child abuse because that issue was not before Division One of this court on appeal. *Yonker*, 85 Wn. App. at 81. Likewise, the legislature's express purpose provided in RCW 26.44.010, that "protective services shall be made available" when DSHS receives a report of child abuse, does not delineate the scope of DSHS's duty to investigate claims of child abuse under RCW 26.44.050. Rather, under a negligent investigation cause of action like ARB's, DSHS's duty as clarified by *M.W.* is a duty to not conduct "a biased or faulty investigation that leads to a harmful placement decision." *M.W.*, 149 Wn.2d at 591.

Absent such "a biased or faulty investigation that leads to a harmful placement decision," DSHS is not liable for a plaintiff's claim of damages for an alleged negligent investigation. *M.W.*, 149 Wn.2d at 591. Contrary to ARB's arguments, DSHS's statutory duty to investigate a report of child abuse or neglect does not *necessarily* include a duty to, for example, offer and implement a voluntary safety plan for the family or initiate a dependency proceeding or other legal action to protect the child. DSHS's failure to take these actions does not constitute a negligent investigation under RCW 26.44.050 absent a faulty or biased investigation that leads to a harmful placement decision under *M.W.*[11]

The trial court's jury instruction 10 told the jury that DSHS had a duty to "conduct a reasonable investigation of a report of potential child abuse." CP at 3969. This instruction allowed the jury to find DSHS negligent for merely conducting an unreasonable investigation and did not limit DSHS's duty to conducting an investigation that was not biased or faulty and leading to a harmful placement decision under RCW 26.44.050. Thus, the trial court's jury instruction 10 was legally erroneous because it misstated the law as articulated in *M.W.*

DSHS proposed two jury instructions relating to its duty to ARB, which were consistent with *M.W.*, but which the trial court rejected. DSHS's proposed jury instruction 20 provided,

> The Department of Social and Health Services may only be liable for a negligent investigation if:
>
> (1) DSHS received a report of child abuse and neglect,
>
> (2) DSHS gathered incomplete or biased information investigating the report, and
>
> (3) The investigation resulted in a harmful placement decision.

---

[11] ARB also argues that DSHS had undertaken a "rescuer" role toward ARB when Lofgren created a safety plan with Tate and Mejia, so DSHS assumed a duty toward him. Reply Br. of Appellant at 46-47. ARB did not raise this argument below, and thus, we do not address it. RAP 2.5(a).

A harmful placement decision must be either:

(1) Removal of a child from a non-abusive parent, guardian, or legal custodian,

(2) Placement of a child in an abusive home, or

(3) Allowing a child to remain in an abusive home.

The Department of Social and Health Services does not have a duty to protect children from all forms of abuse and neglect.

CP at 2376. DSHS's proposed jury instruction 37 provided,

A State statute provides that upon receipt of a report concerning the possible occurrence of abuse or neglect of a child the Defendant DSHS must investigate. A claim against the Defendant DSHS for negligent investigation is only available when DSHS conducts a biased or incomplete investigation that results in a harmful placement decision.

CP at 3897. These proposed jury instructions correctly state DSHS's duty to ARB under *M.W.*

Thus, the trial court erred in rejecting DSHS's proposed jury instructions 20 and 37 and giving

jury instruction 10.

## IV. DSHS's CR 50 Motions to Dismiss

DSHS also argues that the trial court erred in denying its CR 50 motions to dismiss because

ARB did not establish a legal or factual basis that would have allowed DSHS to remove ARB from

his parents' care or to prevent ARB's injury. We disagree.

If a party has presented all of its evidence and the trial court has not yet submitted the case

to the jury, the trial court may grant a motion for judgment as a matter of law if there is no legal

basis on which a reasonable jury could find for the nonmoving party. CR 50(a). We review a trial court's denial of a motion for judgment as a matter of law using the same standard as the trial court. *Mega v. Whitworth College*, 138 Wn. App. 661, 668, 158 P.3d 1211 (2007). "'Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party.'" *Mega*, 138 Wn. App. at 668 (quoting *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 29, 948 P.2d 816 (1997)). A motion for judgment as a matter of law admits the truth of the opponent's evidence and all reasonable inferences from the evidence. *Mega*, 138 Wn. App. at 668.

Here, each party presented the testimony of an assistant attorney general who represented DSHS in dependency proceedings to support its case theory. Catherine Cruikshank testified on behalf of ARB that DSHS's failure to complete an adequate safety plan and to follow up with the family caused ARB's injuries. Barbara Bailey testified on behalf of DSHS and stated that even if Lofgren had sought additional information that ARB argued Lofgren should have sought in her investigation, that additional information would not have been sufficient for DSHS to file a dependency action.

Taken in the light most favorable to ARB, the non-moving party, Cruikshank's and Bailey's conflicting testimony created an issue of fact on causation for the jury. Thus, the trial court properly denied DSHS's motions to dismiss.

## CONCLUSION

We hold that (1) the trial court erred by instructing the jury on superseding cause, (2) the trial court's jury instruction misstated DSHS's duty to ARB, and (3) the trial court did not err in denying DSHS's CR 50 motions to dismiss. Therefore, we reverse and remand for a new trial.

SUTTON, J.

We concur:

MAXA, P.J.

LEE, J.