**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PAUL ADGAR, | No. 56142-5-II |
| Appellant/Cross-Respondent, | |
| v. | |
| MARTIN A. DINSMORE and "JANE DOE" DINSMORE, husband and wife, and their marital community composed thereof, | PUBLISHED OPINION |
| Defendant, | |
| LAKEWOOD WATER DISTRICT, | |
| Respondent/Cross-Appellant. | |

VELJACIC, J. — Martin A. Dinsmore stole a Ford F-250 truck owned by the Lakewood Water District (LWD) approximately one minute after the truck was left unattended with the engine running and the driver side door open on a public right-of-way. A LWD employee walked away from the truck and out of sight even after observing Dinsmore, who was obviously intoxicated, failing in his attempts to enter another vehicle across the street. Minutes after the vehicle theft, Dinsmore swerved into oncoming traffic and struck Paul Adgar's vehicle head-on in an apparent attempt to commit suicide. Adgar suffered serious bodily injuries as a result of the collision.

Adgar filed a complaint alleging negligence claims against LWD and Dinsmore. LWD filed a motion for summary judgment, arguing that (1) it did not owe Adgar a duty of care under the facts of this case, and (2) Dinsmore's intervening acts constituted a superseding cause that cut

56142-5-II

off its liability as a matter of law.  The trial court granted the motion based on superseding cause.  Adgar appeals the trial court's summary judgment order.

We hold that LWD owed a duty of care to Adgar under the specific facts of this case.  We also hold that the trial court erred in concluding that Dinsmore's intervening acts were a superseding cause as a matter of law.  Accordingly, we reverse the trial court's order granting LWD's motion for summary judgment and remand for further proceedings.

FACTS

I.      FACTUAL BACKGROUND

In late 2017 and early 2018, LWD undertook a project to replace a water main near the intersection of Forest Road and Rose Road in Lakewood.  This intersection is located in a residential area.

Dinsmore lives in a gated residence on Forest Road.  He is a self-described alcoholic.  In late 2017 and early 2018, Dinsmore was struggling with depression and suicidal thoughts.  He also dealt with bouts of sleep deprivation.  In January 2018, he was admitted to the hospital after a friend called the suicide hotline.  After being discharged, Dinsmore's primary care provider prescribed him a regime of "20 pills a day," which caused him to act "very strangely."  Clerk's Papers (CP) at 196.

In the early morning hours of February 7, 2018, Samuel Bosma, a LWD employee, drove a LWD owned Ford F-250 truck to the intersection of Forest Road and Rose Road to discuss the water main replacement project with a contractor.  Bosma arrived at approximately 7:45 A.M.  Bosma parked the truck behind the contractor's work truck on Forest Road, which is a public right-of-way and across the street from Dinsmore's residence.  Bosma then got out of the truck to talk

56142-5-II

to the contractor's foreman about the project. However, Bosma left the keys in the ignition, the engine running, the doors unlocked, and the driver side door open.[1]

Bosma and the foreman shared a brief conversation next to their vehicles about some upcoming services on the project. At approximately 8:10 A.M., Bosma and the foreman began to walk north on Forest Road to look at one of the service locations to further discuss the foreman's questions. While walking north on Forest Road, Bosma passed by Dinsmore's driveway. He heard a car alarm going off and saw Dinsmore stumbling backwards after failing to open a car door. Based on his observations of Dinsmore, Bosma stated that "[i]t looked to me like he was intoxicated." CP at 178. Despite these observations, Bosma continued walking north, approximately 100 to 200 feet, until his truck was no longer in sight.

Dinsmore then walked down his driveway, which is approximately 400 feet long, and noticed "an official-looking [truck] sitting right across [his] driveway." CP at 42. Dinsmore saw the driver side door open, heard that the engine was running, and saw two workers about 100 feet away. About a minute later, Dinsmore stole the truck, drove down Rose Road, and took a left onto Portland Avenue.

That same morning, at approximately 8:20 A.M., Adgar was driving to work on Portland Avenue. Adgar saw Dinsmore driving the truck in the opposite, oncoming lane. Then suddenly, without warning, Dinsmore swerved into Adgar's lane and struck his vehicle head on. Dinsmore stated that he attempted to commit suicide when he swerved into Adgar's vehicle. Pre-crash data from the truck showed that Dinsmore depressed the accelerator to 100 percent causing the vehicle's

---

[1] LWD does not dispute that Bosma left the keys in the ignition of the truck. However, LWD disputes Adgar's assertion that Bosma also left the engine running and driver side door open. Because Adgar was the nonmoving party on summary judgment, we view the evidence in light most favorable to him. *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021).

speed to increase from 25 M.P.H. to 53 M.P.H. shortly before the crash. Adgar suffered severe bodily injuries as a result of the collision.

On February 6, the day prior to the collision, Dinsmore approached an employee of a subcontractor who was out to do soil compaction tests at the Forest Road/Rose Road work site. Dinsmore offered the worker $50 for a ride to get alcohol, but the worker declined. The worker told Bosma about the incident and Bosma thought that the interaction was "strange" because "[i]t's not something that typically happens." CP at 184. Bosma did not realize that Dinsmore was the same man who offered to pay the worker until after the theft.

Ian Black, LWD's superintendent, stated that in the 75 years that LWD had been in business, it has never had someone steal a vehicle and cause a collision thereafter. Black stated that it was customary for LWD employees to leave keys in a vehicle within a "construction zone." CP at 114. This was because leaving the vehicle parked and locked with the key put away could hold up the construction process. LWD did not have a policy in place requiring employees to remove keys from unattended vehicles prior to this incident.

Daniel Kimber has 36 years of experience in the water utility industry and is well versed in the policies and practices of a public utility district. Kimber stated that, "[w]hen parking in [a] public right of way, if a utility worker is going to leave a utility vehicle unattended, the worker should put the vehicle in park, turn off the engine, take the keys out of the ignition, and lock the doors." CP at 239. Kimber reasoned in part that there is no utility or benefit to leaving an engine running or leaving the keys in the ignition on a public right-of-way.

Dr. Steve Tutty is a clinical psychologist who reviewed Dinsmore's deposition transcripts and medical records. CP 293-95. Based on his review of the records, Dr. Tutty opined that it was more probable than not that

4

56142-5-II

> Dinsmore's bipolar disorder combined with his ingestion of psychotropic prescription medication, sleep deprivation, and alcohol abuse impaired his judgment and insight on February 7, 2018, so that he was unable to form the intent to commit an intentional act, specifically the intent to steal the [LWD] truck and the intent to commit suicide.

CP at 295.

II.    PROCEDURAL HISTORY

Adgar filed an amended complaint against Dinsmore and LWD in Pierce County Superior Court.[2]  Adgar alleged that LWD breached its duty of care to properly secure its vehicle on a public roadway and that such breach was a proximate cause of his injuries.

LWD filed a motion for summary judgment, arguing that it did not owe Adgar a duty of care because no special relationship existed between the parties so as to require LWD to protect against Dinsmore's criminal conduct.  LWD also argued that Adgar failed to show causation as a matter of law because: (1) Washington case law holds that leaving keys in an unattended vehicle is not the proximate cause of a thief's subsequent tortious acts; and (2) Dinsmore's act to commit suicide constituted a superseding cause that cut off any liability of LWD.

In response, Adgar argued that LWD owed him a duty of care because, given the specific circumstances here, Bosma's affirmative acts created an unreasonable risk of harm to him.  Adgar also argued that LWD's breach of its duty proximately caused his injuries because Dinsmore's intervening acts were not unforeseeable or remote.

The trial court granted LWD's motion for summary judgment.  The trial court declined to rule whether LWD owed a duty of care to Adgar based on the facts of this case.  Instead, the trial

---

[2] Adgar settled with Dinsmore several months after summary judgment was granted in favor of LWD.  Accordingly, Dinsmore is no longer a party to this lawsuit.

56142-5-II

court granted LWD's motion because it concluded that Dinsmore's act of attempted suicide was a superseding cause that cut off LWD's alleged negligence as a matter of law. Adgar appeals.

ANALYSIS

Adgar argues that the trial court erred in granting LWD's motion for summary judgment, which dismissed his negligence claims. We agree.

I.    STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). We perform the same inquiry as the trial court in its review. *Lakehaven Water & Sewer Dist. v. City of Federal Way*, 195 Wn.2d 742, 752, 466 P.3d 213 (2020). We consider the facts and reasonable inferences in the light most favorable to the nonmoving party. *Meyers*, 197 Wn.2d at 287. Summary judgment is appropriate if the pleadings, affidavits, and depositions show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 722, 425 P.3d 837 (2018); CR 56(c). "'A material fact is one that affects the outcome of the litigation.'" *Keck v. Collins*, 184 Wn.2d 358, 370 n.8, 357 P.3d 1080 (2015) (quoting *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005)). Summary judgment is proper if, given the evidence, reasonable persons could reach only one conclusion. *Walston v. Boeing Co.*, 181 Wn.2d 391, 395, 334 P.3d 519 (2014).

To establish an actionable negligence claim, a plaintiff must establish the existence of (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury. *Meyers*, 197 Wn.2d at 287.

6

56142-5-II

II.     DUTY OF CARE[3]

While the trial court did not rule on the issue, Adgar argues that LWD owed a duty of care to protect him from Dinsmore's criminal conduct because Bosma's affirmative acts exposed him to recognizable high degree of risk of harm, which a reasonable person would have taken into account. Based on the facts of this case, we agree.

A.     Legal Principles

The existence of a duty owed by the defendant to the plaintiff is an essential element of an actionable negligence claim. *Kim v. Budget Rent A Car Sys. Inc*., 143 Wn.2d 190, 194-95, 15 P.3d 1283 (2001). The existence of a duty is a question of law for the court to resolve, which is determined by reference to considerations of public policy. *Parilla v. King County*, 138 Wn. App. 427, 432, 157 P.3d 879 (2007).

"Actors have a duty to exercise reasonable care to avoid the foreseeable consequences of their acts." *Washburn v. City of Federal Way*, 178 Wn.2d 732, 757, 310 P.3d 1275 (2013). As a general rule, there is no duty to prevent third parties from causing criminal harm to others because criminal conduct is generally unforeseeable. *Id*. "Criminal conduct is, however, not unforeseeable per se." *Id*. Recognizing this, our Supreme Court has adopted *Restatement (Second) of Torts* § 302B (1965) as an exception to the general rule. *Id*.

Pursuant to *Restatement (Second)* § 302B, "a duty to guard against a third party's foreseeable criminal conduct exists where an actor's own affirmative act has created or exposed another to a recognizable high degree of risk of harm through such misconduct, which a reasonable

---

[3] LWD argues that there is no special relationship between the parties that imposes a duty to control Dinsmore's actions. We do not discuss the issue because Adgar concedes that there is no special relationship between the parties in this case.

7

56142-5-II

person would have taken into account." *Parilla*, 138 Wn. App. at 439. Specifically, section 302B provides that:

> "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."

*Kim*, 143 Wn.2d at 196 (quoting RESTATEMENT (SECOND) § 302B). An official comment to section 302B provides that:

> "There are . . . situations in which the actor, as a reasonable [person], is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where the actor is under a special responsibility toward the one who suffers the harm, which includes the duty to protect [them] against such intentional misconduct; *or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable [person] would take into account.*"

*Parilla*, 138 Wn. App. at 433-34 (emphasis in original) (quoting RESTATEMENT (SECOND) § 302B cmt. e ). Our Supreme Court has explained that "[t]his does not mean that any risk of harm gives rise to a duty. Instead, an unusual risk of harm, a 'high degree of risk of harm,' is required." *Kim*, 143 Wn.2d at 196 (quoting RESTATEMENT (SECOND) § 302B cmt. e).

Washington courts have looked to the illustrations provided in section 302B for additional guidance:

> Pursuant to two of these illustrations, a duty of care may arise "[w]here the actor acts with knowledge of peculiar conditions which create a high degree of risk of intentional misconduct," or "[w]here property of which the actor has possession or control affords a peculiar temptation or opportunity for intentional interference likely to cause harm."

*Parilla*, 138 Wn. App. at 434 (footnotes omitted) (quoting RESTATEMENT (SECOND) § 302B cmt. e, section G, H). An additional official comment to section 302B explains that the existence or nonexistence of a duty must be determined by reference to the particular circumstances at issue:

8

56142-5-II

> "It is not possible to state definite rules as to when the actor is required to take precautions against intentional or criminal misconduct. As in other cases of negligence, . . . it is a matter of balancing the magnitude of the risk against the utility of the actor's conduct. *Factors to be considered are the known character, past conduct, and tendencies of the person whose intentional conduct causes the harm, the temptation or opportunity which the situation may afford [them] for such misconduct, the gravity of the harm which may result*, and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the actor would be required to take."

*Parilla*, 138 Wn. App. at 434 (alternations in original) (quoting RESTATEMENT (SECOND) § 302B cmt. f).

### B.      LWD Owed Adgar a Duty of Care Under the Facts of This Case

Adgar argues that LWD owed him a duty to protect against Dinsmore's criminal acts because the facts here closely mirror the circumstances in *Parilla*, 138 Wn. App. 427, where the court imposed such a duty. We agree.

In *Parilla*, an altercation erupted between two passengers on a King County Metro bus as it was travelling on a public right-of-way. *Id*. at 430. The bus driver pulled over to the curb and asked all of the passengers to disembark. *Id*. All but three of the passengers, Courvoisier Carpenter and the two individuals involved in the altercation, complied with the driver's order. *Id*. at 430-31. The bus driver exited the bus, leaving the engine running with Carpenter and the two other passengers on board. *Id*. at 431. The two individuals in the altercation left and the driver re-entered the bus asking Carpenter to disembark. *Id*. Carpenter then began exhibiting bizarre behavior, including acting as if he were talking to somebody outside of the vehicle although nobody was there, yelling unintelligibly, and striking the windows of the bus with his fists. *Id*.

9

56142-5-II

After observing Carpenter's behavior for several minutes, the driver exited the bus a second time, again leaving the engine running with Carpenter on board. *Id*. Carpenter moved into the driver's seat of the idling 14–ton bus and drove it down the public right-of-way before crashing into several vehicles, including that of the Parrillas. *Id*. The Parillas suffered injuries as a result of the collision. *Id*. During these events, Carpenter was heavily under the influence of phencyclidine (PCP) and carboxy-THC (tetrahydrocannabinol), illegal recreational drugs. *Id*.

Division One of this court held that, pursuant to the circumstances alleged, King County owed a duty of care to the Parrillas. *Id*. at 440-41. The court looked to the factors set out in section 302B in order to reach its holding. *Id*. at 440. First, the court noted that the bus driver "acted with knowledge of peculiar conditions which created a high degree of risk of intentional misconduct." *Id*. The court found significant that the bus driver was fully aware of Carpenter's erratic behavior and acts displaying a tendency toward criminal conduct. *Id*. Yet, despite this knowledge, the bus driver affirmatively acted by leaving the bus running next to the curb of a public street with Carpenter on board. *Id*.

Second, the court noted that the risk of harm from the criminal operation of a 14-ton bus was recognizably high, unlike a normal passenger vehicle. *Id*. Third, the court noted that the bus was stolen by Carpenter mere moments after it was left unattended, not at a remote future time by an unknown individual. *Id*. Accordingly, the court concluded that "[a] jury could well find that Carpenter's actions were reasonably foreseeable under these circumstances." *Id*.

Similar to *Parilla*, we recognize a very narrow duty not to leave one's motor vehicle running with the door open, on a roadway, while leaving the vehicle unguarded out of sight, when an unknown individual is nearby and it is foreseeable that the person might steal the vehicle.

10

Notably, we are not holding that the duty extends to a car running in one's own driveway or garage.[4]

Here, Bosma saw an intoxicated person in close proximity to his truck attempting and failing to get into another vehicle. It was foreseeable that such a person might attempt to get into and drive the LWD truck if the truck was left running with the door open and unattended. Doing so created a high degree of risk that was foreseeable for purposes of establishing a duty on the part of LWD. Therefore, under the specific facts of this case, Bosma owed a duty not to leave the truck running and unattended with the door open.

Even though we conclude that LWD owed a duty to Adgar here, we do not reach the issue of whether the scope of the duty extends to these facts. As recognized by our Supreme Court, while

> [t]he first inquiry . . . is whether a duty to protect against third party criminal conduct is owed at all. The second inquiry . . . , foreseeability of harm as a limit on the scope of the duty, considers whether the harm sustained is reasonably perceived as being within the general field of danger covered by the duty owed by the defendant. . . . In this way, foreseeability plays a role in both the legal and factual inquiries regarding duty and its scope.

*McKown v. Simon Prop. Grp., Inc.*, 182 Wn.2d 752, 764, 344 P.3d 661 (2015) (internal citations omitted). This latter question is a question of fact for the jury. *Id.*

Accordingly, there remains an unresolved question as to whether the scope of the duty we have recognized extends to the facts here. This is a question we leave for the jury.

---

[4] Adgar also appears to argue that RCW 46.61.600 imposes a duty of care on LWD. However, the Supreme Court in *Kim* rejected the proposition that RCW 46.61.600 was enacted for the purpose of protecting the class of persons to which Adgar is a member. 143 Wn.2d at 202. That interpretation is binding on this court until it is overruled by the Supreme Court. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). Accordingly, this argument fails.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

56142-5-II

III.    SUPERSEDING CAUSE

Adgar argues that the trial court erred in concluding that Dinsmore's intervening acts constituted a superseding cause that cut off LWD's liability as a matter of law. We agree.

A.    Legal Principles

Proximate cause is an essential element of an actionable negligence claim. *Ehrhart v. King County*, 195 Wn.2d 388, 396, 460 P.3d 612 (2020). Proximate cause contains two prongs: (1) cause in fact and (2) legal cause. *Meyers*, 197 Wn.2d at 289. "[T]he cause in fact inquiry focuses on a 'but for' connection, [while] legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *Id*. (quoting *Schooley v. Pinch's Deli Market, Inc*., 134 Wn.2d 468, 478-79, 951 P.2d 749 (1998)).

An act that produces an injury generally is the proximate cause of that injury, unless a new, independent act breaks the chain of causation thereby superseding the original act as the proximate cause of the injury. *Roemmich v. 3M Co*., 21 Wn. App. 2d 939, 952, 509 P.3d 306 (2022). Washington courts regularly look to the *Restatement (Second) of Torts* in applying the doctrine of superseding cause. *See, e.g., Campbell v. ITE Imperial Corp*., 107 Wn.2d 807, 812-14, 733 P.2d 969 (1987); *Roemmich*, 21 Wn. App. 2d at 952. "The *Restatement of Torts* defines 'superseding cause' as 'an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.'" *Roemmich*, 21 Wn. App. 2d at 952 (quoting RESTATEMENT (SECOND) § 440).

"'Whether an act may be considered a superseding cause sufficient to relieve a defendant of liability depends on whether the intervening act can reasonably be foreseen by the defendant;

12

only intervening acts which are *not* reasonably foreseeable are deemed superseding causes.'"[5] *Albertson v. State*, 191 Wn. App. 284, 297, 361 P.3d 808 (2015) (quoting *Riojas v. Grant County Pub. Util. Dist.*, 117 Wn. App. 694, 697, 72 P.3d 1093 (2003)). "Reasonable foreseeability does not require that the precise manner or sequence of events in which a plaintiff is harmed be foreseeable." *Albertson*, 191 Wn. App. at 297.

> "Rather, as the *Restatement (Second) of Torts* explains, '[I]f the likelihood that a third person may act in a particular manner is . . . one of the hazards which makes the [defendant] negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [defendant] from being liable' for the injury caused by the defendant's negligence."

*Albertson*, 191 Wn. App. at 297 (alterations in original) (quoting RESTATEMENT (SECOND) § 449); *see also Campbell*, 107 Wn.2d at 813.

In determining whether an intervening act constitutes a superseding cause, the relevant considerations are: "whether (1) the intervening act created *a different type of harm* than otherwise would have resulted from the actor's negligence; (2) the intervening act was *extraordinary* or resulted in extraordinary consequences; (3) the intervening act *operated independently* of any situation created by the actor's negligence." *Campbell*, 107 Wn.2d at 812-13; *see also* RESTATEMENT (SECOND) § 442; *Roemmich*, 21 Wn. App. 2d at 953.

---

[5] As is evident, both the duty and proximate cause inquires ask whether the intervening act is reasonably foreseeable. "While the issues of duty and legal cause often involve similar considerations, they are separate inquiries." *Meyers*, 197 Wn.2d at 291. Our Supreme Court has clarified that

> a court should not conclude that the existence of a duty automatically satisfies the requirement of legal causation. This would nullify the legal causation element and along with it decades of tort law. Legal causation is, among other things, a concept that permits a court for sound policy reasons to limit liability where duty and foreseeability concepts alone indicate liability can arise.

*Schooley*, 134 Wn.2d at 479.

13

56142-5-II

"[W]here a third actor intervenes between the defendant's alleged wrongdoing and the plaintiff's injuries, the intervening cause is examined as part of the 'cause in fact' inquiry." *McCoy v. Am. Suzuki Motor Corp.*, 136 Wn.2d 350, 358, 961 P.2d 952 (1998). Accordingly, "[w]hether a third party's intervening act rises to the level of a superseding cause is generally a question of fact for the jury, but it may be determined as a matter of law if reasonable minds could not differ as to the foreseeability of the act." *Roemmich*, 21 Wn. App. 2d at 953.

B.  The Trial Court Erred in Resolving the Issue of Superseding Cause as a Matter of Law

Here, having concluded above that LWD owed Adgar a duty of care, "[a] jury could well find that [Dinsmore's] actions were reasonably foreseeable under these circumstances." *Parilla*, 138 Wn. App. at 440. However, this does not mean that causation is established because duty and proximate cause are separate inquires. *Meyers*, 197 Wn.2d at 291. We conclude the trial court erred in concluding that Dinsmore's intervening acts rose to the level of a superseding cause as a matter of law.

First, Dinsmore's intervening acts did not create a different type of harm than would have otherwise resulted from LWD's alleged negligence. LWD's alleged negligence stems from Bosma's affirmative act of leaving the truck running with its driver side door open after observing Dinsmore, in close proximity, appearing intoxicated and attempting to enter another vehicle. Based on these circumstances, Bosma's affirmative act created a high degree of risk of harm that Dinsmore would steal the truck and cause a collision in an intoxicated state. Here, Adgar suffered personal injuries from an automobile collision—the same type of harm created by LWD's alleged negligence.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

56142-5-II

Second, in one sense Dinsmore's act of attempted suicide could be considered extraordinary in light of the antecedent negligence by LWD. However, Adgar was injured by an automobile collision, an ordinary consequence of an intoxicated person stealing a truck.

Third, Dinsmore's intervening acts did not operate independently of the situation created by LWD's alleged negligence. To use the language used by our Supreme Court in *Campbell*, Dinsmore's intervening acts were "activated" by Bosma's affirmative act of leaving the truck running, with the door open, and unattended. 107 Wn.2d at 815.

Based on the foregoing, we hold that the trial court erred in concluding that Dinsmore's acts were a superseding cause as a matter of law.

C.      LWD's Arguments to the Contrary are Without Merit

LWD argues that the trial court did not err in concluding that Dinsmore's intervening acts were a superseding cause as a matter of law because "Washington courts long ago made the policy determination that suicide is an independent act that breaks the chain of proximate cause and cuts off liability." Br. of Resp't at 25. LWD primarily relies on *Arsnow v. Red Top Cab Co.*, 159 Wash. 137, 292 P. 436 (1930), *Orcutt v. Spokane County*, 58 Wn.2d 846, 364 P.2d 1102 (1961), and *Webstad v. Stortini*, 83 Wn. App. 857, 924 P.2d 940 (1996), to support its proposition. We disagree.

Here, LWD's reliance on *Arsnow*, *Orcutt*, and *Webstad* is inapposite. In each of those cases, a wrongful death suit was brought by the estate of the decedent against the defendant alleging that the defendant's negligent acts were the proximate cause of the decedent's suicide. *Arsnow*, 159 Wash. at 138-39; *Orcutt*, 58 Wn.2d at 847-50; *Webstad*, 83 Wn. App. at 859-60. However, that is simply not the case here. Dinsmore is not the one claiming that LWD's negligent conduct caused him to attempt suicide. Instead, this case concerns whether a third party's

15

56142-5-II

intervening acts rose to the level of a superseding cause because Adgar is claiming that Bosma's antecedent negligence proximately caused his injuries. Because the cited cases are distinguishable from this case, LWD's argument fails.[6]

Next, LWD argues that out-of-state cases generally hold that suicide is an intentional culpable act that is unforeseeable as a matter of law. LWD relies on *Scoggins v. Wal-Mart Stores, Inc.*, 560 N.W.2d 564 (1997), *Rains v. Bend of the River*, 124 S.W.3d 580 (Tenn. 2003), *Chalhoub v. Dixon*, 788 N.E.2d 164 (Ill. 2003); *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439 (7th Cir. 2009), and *Harbaugh v. Coffinbarger*, 543 S.E.2d 338 (W.Va. 2000), to support its proposition. We conclude that the cited out-of-state cases are inapposite to the circumstances present in this case.

Here, as an initial matter, out-of-state cases are not binding on this court and need not be followed. *Citizens All. for Prop. Rts. v. San Juan County*, 181 Wn. App. 538, 546, 326 P.3d 730 (2014). Even if the cited cases were binding, they are all distinguishable, and therefore, unpersuasive. Much like LWD's misguided reliance on Washington wrongful death cases, in each of the cited cases, the decedent's estate alleged that the defendant's negligence in either selling a firearm/ammunition or making a firearm/ammunition available proximately caused the decedent's suicide. *Scoggins*, 560 N.W.2d at 566; *Rains*, 124 S.W.3d at 586; *Chalhoub*, 788 N.E.2d at 165-66; *Johnson*, 588 F.3d at 441; *Harbaugh*, 543 S.E.2d at 347. Again, this is not a case where Dinsmore is claiming that LWD's negligence proximately caused him to attempt suicide. Accordingly, LWD's reliance on these cases is unpersuasive.

---

[6] LWD's reliance on *Cotten v. Wilson*, 576 S.W.3d 626 (2019), fails for the same reason.

16

56142-5-II

LWD argues that the trial court did not err in concluding that Dinsmore's intervening acts were a superseding cause as a matter of law because the proper focus of the inquiry is "on the intentional nature of the intervening act, not the foreseeability of the injury." Br. of Resp't at 39. We disagree.

It is true that Washington courts have stated the superseding cause inquiry "'depends on whether the intervening act can reasonably be foreseen by the defendant.'" *Albertson*, 191 Wn. App. at 297 (quoting *Riojas*, 117 Wn. App. at 697). However, the proper focus is not solely on the foreseeability of the intervening act, but also whether the resulting injury falls within the scope of harm created by an actor's antecedent negligent conduct. *Albertson*, 191 Wn. App. at 297; RESTATEMENT (SECOND) §§ 442B, 449 (1965). Indeed, an official comment to section 442B provides that,

> If the actor's conduct has created or increased the risk that a particular harm to the plaintiff will occur, and has been a substantial factor in causing that harm, it is immaterial to the actor's liability that the harm is brought about in a manner which no one in his position could possibly have been expected to foresee or anticipate. This is true not only where the result is produced by the direct operation of the actor's conduct upon conditions or circumstances existing at the time, but also where it is brought about through the intervention of other forces which the actor could not have expected, whether they be forces of nature, or the actions of animals, or those of third persons which are not intentionally tortious or criminal. *This is to say that any harm which is in itself foreseeable, as to which the actor has created or increased the recognizable risk, is always "proximate," no matter how it is brought about, except where there is such intentionally tortious or criminal intervention, and it is not within the scope of the risk created by the original negligent conduct.*

RESTATEMENT (SECOND) § 442B, cmt. b (emphasis added); *see also Doyle v. Nor-West Pac. Co.*, 23 Wn. App. 1, 7, 594 P.2d 938 (1979) ("[E]ven if the intervening acts were as a matter of law unforeseeable, there would remain the question of whether the harm was within the risk created by [defendant's] negligence."). Based on the foregoing principles, the trial court erred by solely focusing on the specific conduct of Dinsmore in deciding the issue of superseding cause. The

17

scope of harm created by LWD's antecedent negligence is also a relevant consideration. Again, it was error for the trial court to conclude that Dinsmore's conduct was a superseding cause as a matter of law.

LWD appears to argue that the trial court did not err in granting its motion for summary judgment because no reasonable mind could conclude that "a traffic collision is a foreseeable consequence of merely leaving keys in a car." Br. of Resp't at 40. LWD appears to rely on *Pratt v. Thomas*, 80 Wn.2d 117, 491 P.2d 1285 (1971), and *Kim*, 143 Wn.2d 190, to support its proposition. We conclude that LWD's reliance on *Pratt* and *Kim* is inapposite.

In *Pratt*, the defendants parked their station wagon in a school parking lot with the ignition unlocked. 80 Wn.2d at 118. The defendants took the keys, but the specific model of their vehicle could have the keys removed and the ignition remain unlocked. *Id*. Sometime in the next two hours, three high school students stole the vehicle and drove it some distance to pick up another individual. *Id*. The thieves drove the vehicle for a while, but the state patrol eventually saw it and pursued. *Id*. A high speed chase ensued, which led to the plaintiff's injuries. *Id*.

The Supreme Court held that proximate cause was lacking on these facts as a matter of law. *Id*. at 119. The court reasoned:

> Here it is plain the accident which caused plaintiff's injuries was not a part of the natural and continuous sequence of events which flowed from respondents' act in leaving their stationwagon [sic] in the parking lot. It was the result of new and independent forces. Among the new forces were the stealing of the vehicle, the pursuit by the state patrol, the attempt by the thieves to run from the officers and, finally, the accident.

*Id*. at 119. In reaching its holding, the court applied the following rule from *Sailor v. Ohlde*, 71 Wn.2d 646, 647, 430 P.2d 591 (1967):

18

> Where the owner of a vehicle parks it off the street, turns off the ignition, but leaves the key in the ignition, and a stranger or intermeddler thereafter causes the vehicle to be set in motion resulting in personal injuries or property damages, it has usually been held that the owner of the parked vehicle is not liable for the negligence of the stranger or intermeddler.

In *Kim*, Demicus Young trespassed onto Budget Rent a Car's administrative facility parking lot to steal a vehicle. 143 Wn.2d at 194. No vehicles are rented from this lot and it had no fences, barriers, lights, security personnel, or cameras. *Id*. Young found an unlocked Dodge minivan with the keys in its ignition and stole the vehicle. *Id*. There was no evidence that a vehicle had ever been stolen from Budget's administrative facility. *Id*. Young drove home and went to sleep. *Id*. The next day, he consumed alcohol and smoked marijuana. *Id*. He then attempted to drive the minivan, but struck a telephone pole pulling out of his driveway. *Id*. Young tried to speed away, ran a stop sign in the process, and caused an accident which severely injured the plaintiff. *Id*.

The Supreme Court held that both prongs of proximate cause were lacking as a matter of law. *Id*. at 203-06. The court held that cause in fact was lacking because: (1) the accident was not produced by the natural and continuous sequence of events initiated by the defendant's failure to secure a vehicle in a private parking lot, (2) the intervening third party made at least one temporary stop, and (3) a police chase and accident ensued. *Id*. at 203-04. The court also held that legal cause was lacking based on the remoteness in time between the criminal act and the injury to the plaintiff. *Id*. at 205.

56142-5-II

Here, *Pratt* and *Kim* are factually distinguishable from this case. Unlike *Pratt* and *Kim*, the vehicle theft occurred on a public right-of-way, not a private parking lot. Unlike *Pratt* and *Kim*, Dinsmore did not make at least one temporary stop. The collision here occurred mere moments after the vehicle theft and not some remote time in the future. Additionally, a significant difference between this case and *Pratt* and *Kim* is that Dinsmore was not an unknown individual— Bosma observed his peculiar behavior moments before walking away from the truck until it was out of sight while it was idling and its driver side door left open.

Furthermore, unlike *Pratt* and *Kim*, legal cause is not lacking on these facts because the collision here did not occur at a remote time in the future, as explained above. Again, the collision here occurred mere moments after the vehicle theft. Indeed, *Kim* recognized that "of the few cases that have allowed third party tort liability in 'key in ignition' cases, most have not involved the type of attenuated facts present here." 143 Wn.2d at 205-06. The chain of events in this case closely resembles the cited out-of-state cases in *Kim*. *See*, *e.g.*, *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991) (vehicle stolen at 11:00 A.M., accident at 11:33 A.M.); *Cruz v. Middlekauff Lincoln Mercury, Inc.*, 909 P.2d 1252, 1253 (Utah 1996) (vehicle stolen in early evening, accident at 8:00 P.M.); *Kozicki v. Dragon*, 583 N.W.2d 336, 338 (Neb. 1998) (vehicle stolen at 5:45 A.M., accident later that morning).

We hold that the trial court erred in concluding that Dinsmore's intervening acts were a superseding cause as a matter of law.

20

56142-5-II

CONCLUSION

We reverse the trial court's order granting LWD's motion for summary judgment and remand the case for further proceedings.

_____
Veljacic, J.

We concur:

_____
Maxa, J.

_____
Cruser, A.C.J.